WILLIAM LOUIS ALBRITTON, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 46246, 46247, 46248, 50377, 50378, 50379.  Filed August 16, 1955.

*Allison R. Kolb, Esq.*, for the petitioners.
*Robert B. Wallace, Esq.*, for the respondent.

OPINION.

OPPER, *Judge:* Determinations of deficiencies in income tax for 1948 and 1949, as follows, are here in issue:

| Docket No. | Amount | Docket No. | Amount |
|---|---|---|---|
| 46246 | $650.56 | 50377 | $763.75 |
| 46247 | 617.94 | 50378 | 1,403.52 |
| 46248 | 785.50 | 50379 | 832.70 |

The only remaining question is whether respondent properly treated the proceeds of a contract covering sand and gravel on petitioners' premises as ordinary income.

All of the facts have been stipulated. They are hereby so found. Petitioners filed their returns with the collector of internal revenue for the New Orleans district.

A partnership of which petitioners were members owned gravel and sand-bearing lands. On August 29, 1947, they executed an instrument reading in part as follows:

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

BEFORE ME, the undersigned Notary Public, personally came and appeared ALVIN R. ALBRITTON, WM. LOUIS ALBRITTON, and A. STIRLING ALBRITTON, residents of the Parish of East Baton Rouge, State of Louisiana, all of the full age of majority, hereinafter referred to as "lessors", have, for and upon the terms and conditions hereinafter expressed, and they do by these presents lease and let for the purposes hereinafter mentioned, under all lawful

---

[1] Proceedings of the following petitioners are consolidated herewith: A. Stirling Albritton and Ruth T. Albritton, Husband and Wife, Docket No. 46247; Alvin R. Albritton and Quilla Albritton Dilworth, Docket No. 46248; William Louis Albritton, Docket No. 50377; Alvin R. Albritton and Quilla D. Albritton Dilworth, Docket No. 50378; and A. Stirling Albritton and Ruth T. Albritton, Docket No. 50379.

warranties, with substitution and subrogation to all rights and actions of warranty against all preceding owners and vendors, unto J. W. CARRUTH d/b/a MAGNOLIA SAND & GRAVEL CO., hereinafter designated as "lessee", here present, leasing and accepting and acknowledging delivery and possession for himself, his heirs and assigns, all and singular, the following described property, to-wit:

*     *     *     *     *     *     *

The lessee shall have the right to mine, extract, remove, and take from said premises all of the merchantable and marketable sand and gravel owned in and under said premises, with the right to remove any and all top soil or "overburden" above said sand and gravel and also lessee shall have the right to use necessary space for the construction of hoppers, bins, and stock pile on said premises, all without any payment in addition to the royalties and other payments herein specifically provided for.

The lessee shall have, during the term of this lease, the unlimited servitude of passage and right-of-way over the said premises and adjoining land belonging to lessors for the removal of the sand and gravel mined, extracted, removed and taken from the premises, which servitudes of passage and right-of-ways shall be a road or roads fifty (50) feet in width, the site or sites of which are to be selected by mutual agreement of the parties hereto. The lessors are to furnish free from royalty to lessee any and all gravel and sand located on the said premises that lessee might desire to use in the construction and maintenance or [sic] roads and roadways on said premises or adjoining lands belonging to lessors. Lessors reserve to themselves, their agents, employees, assigns, lessees, and vendees the use of all roads now on or later constructed on property belonging to lessors.

This lease shall be for a primary term of six (6) months from the date hereof, and shall continue in force and effect so long as operations are continued or the minimum monthly payments of Two Hundred and No/100 ($200.00) Dollars are made; provided that operations cannot be suspended for more than six (6) consecutive months without causing a forfeiture of this lease at the option of lessors.

This lease is made and accepted for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, which, upon the execution hereof, is paid in cash by lessee to lessors, the receipt of which is hereby acknowledged, and for a further consideration lessee shall pay lessors for all sand and gravel mined and shipped from the said premises herein leased at the rate of five percent (5%) of the retail sales value of each cubic yard of gravel and four percent (4%) of the retail price for each cubic yard of sand so mined and shipped. * * *

It is further understood and agreed that the amount to be paid lessor by the lessee in any one month after operations are commenced shall be not less than Two Hundred and No/100 ($200.00) Dollars, whether as payment for gravel or sand removed during the said month or as an advance payment of royalty, regardless of the quantity of the sand and gravel removed during the said month. All advance payments so made will be a credit against royalty later owed by lessee to lessors.

It is further understood and agreed that the monthly payments of Two Hundred and No/100 ($200.00) Dollars shall commence thirty (30) days after the date of execution of this lease, whether or not lessee has commenced operations on the premises, which payments will be considered an advance payment of royalty.

If operations for mining, extracting, removing and taking from the said premises gravel and sand are not commenced on said premises herein leased

on or before six (6) months from the date hereof, this lease shall then terminate, for it is the intention of the parties hereto that operations shall be commenced at the earliest practical time and carried on thereafter without undue interruption. If, after operations are commenced and [*sic*] shall thereafter be suspended for more than six (6) consecutive months, this lease shall then terminate at the option of the lessors, regardless of whether or not the minimum payments of Two Hundred and No/100 ($200.00) Dollars per month have been paid during the time operations have been suspended.

Lessee shall maintain at his own expense cattleguards and gates wherever any roadway built by him shall cut any fences of lessors.

The lessors shall pay all taxes assessed or that may be assessed against the premises herein leased promptly and before they become delinquent during the continuance of this lease, in default whereof lessee is hereby authorized, at his option, to pay said taxes at the cost and expense of lessors, and it is agreed and stipulated that all sums so expended in paying said taxes shall bear interest at the rate of five percent (5%) per annum from date of disbursement until paid.

Lessee shall be responsible for and pay all severance taxes due to the State of Louisiana for all sand and gravel mined on the premises.

Lessee shall have over the aforesaid property only those rights intimately concerned and related to the mining and removing of sand and gravel, said lessee having no jurisdiction or authority whatsoever as to the use or disposal of timber or rights to tillable or pasture lands, houses or improvements, or other saleable or leaseable properties or products. However, lessee shall have the right to cut and use such timber standing on the premises as may be necessary or useful in the construction of bins, hoppers and similar improvements.

The lessee shall have the right to stock-pile or store sand and gravel on lands belonging to lessors adjacent to the above-described premises at any point mutually agreeable to lessee and lessors, and shall have the right to remove such sand and gravel so stock-piled or stored any time within the period of this lease or within three (3) years after the termination of this lease.

Other similar leases were executed on October 28, 1947, and July 10, 1948. During the tax years the following amounts were received and reported by the respective partners:

*Taxable Year 1948*

| Name | Docket No. | Gravel partnership income | Per cent interest in partnership | Income reported by taxpayer | Total receipts |
|---|---|---|---|---|---|
| William Albritton | 46246 | $12,442.95 | 25 | $1,555.37 | $3,110.74 |
| Stirling Albritton | 46247 | 12,442.95 | 25 | 1,555.37 | 3,110.74 |
| Alvin Albritton | 46248 | 12,442.95 | 50 | 3,110.73 | 6,221.46 |

*Taxable Year 1949*

| Name | Docket No. | Gravel partnership income | Per cent interest in partnership | Income reported by taxpayer | Total receipts |
|---|---|---|---|---|---|
| William Albritton | 50377 | $22,246.34 | 25 | $2,783:04 | $5,566.08 |
| Alvin Albritton | 50378 | 22,246.34 | 50 | 5,566.08 | 11,132.17 |
| Stirling Albritton | 50379 | 22,246.34 | 25 | 2,783.04 | 5,566.08 |

Respondent determined that the amounts in question were ordinary income and not capital gain as reported.

These petitioners contend that they "sold" their gravel deposit and hence were entitled to treat the proceeds as capital gain. But the nature of the income and the taxpayer's right to a depletion allowance have always been considered as related questions. Cf., e. g., *Otis A.*

*Kittle*, 21 T. C. 79, with *Anderson* v. *Helvering*, 310 U. S. 404. Another taxpayer under similar circumstances but seeking to obtain the benefit of depletion might make this petitioner's argument in reverse. If we were to sustain petitioners here that taxpayer would have to be frustrated.

Except for the fact that this is a gravel deposit there is nothing in this situation to distinguish it from *Otis A. Kittle, supra,* where we held the proceeds of an ore lease to be ordinary income notwithstanding the payment of advance or minimum royalties. We there quoted and relied upon *Burnet* v. *Harmel,* 287 U. S. 103, to the effect that—

the payments made by the lessee are consideration for the right which he acquires to enter upon and use the land for the purpose of exploiting it, as well as for the ownership of the oil and gas; under both the bonus payments are paid and retained, regardless of whether oil or gas is found and despite the fact that all which is not abstracted will remain the property of the lessor upon termination of the lease.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Bonus and royalties are both consideration for the lease and are income of the lessor. We cannot say that such payments by the lessee to the lessor, to be retained by him regardless of the production of any oil or gas, are any more to be taxed as capital gains than royalties which are measured by the actual production. \* \* \*

That principle is as applicable here as it was in *Burnet* v. *Harmel* and *Otis A. Kittle,* both *supra.* And *Anderson* v. *Helvering, supra,* is as distinguishable here as it was there.

Petitioners were to be paid on the basis of gravel extracted. They "leased" their land not only to the extent of the gravel, but also for access, for recovery of the mineral, to remove the overburden, and to use the surface for such ancillary purposes as the mining of the gravel involved. While we agree with petitioners that we should regard "the 'realities' here, rather than the formalities" and that "The use of the word 'royalty' cannot change the true nature of this cash consideration," we think it manifest that that true nature, under the decided cases, is that, whatever the terms used, a mining lease—or *profit a prendre*—results in ordinary income to the owner of the property and grants a corresponding economic interest in the minerals in place which can be used as the ground of a claim for depletion.

Petitioners insist however that it has been held that gravel is not a mineral and a gravel deposit not a mine within the meaning of the Revenue Act of 1926 so as to entitle the taxpayers to discovery value depletion. *Parker Gravel Co.,* 21 B. T. A. 51; *Grand River Gravel Co.,* 22 B. T. A. 1124.

Whether this would influence the present situation if now controverted we need not consider. Suffice it to say that the Internal Revenue Code of 1939 provides for depletion of "natural deposits" and that Regulations 111, section 29.23 (m)–1 (*d*), defines the term

"minerals" to include "gravel" and "sand." In fact, respondent expressly states here that "Lessors have retained an interest which is subject to an allowance for depletion."

That title to the gravel may have passed to the lessee under local (Louisiana) law is as inconsequential here as it was in *James R. Parkey et al.*, 16 B. T. A. 441. "* * * before the enactment of the capital gains provision" the cases had "established, for purposes of defining 'income' in a tax measured by it, that payments by lessees to lessors under mining leases were not a conversion of capital, as upon a sale of capital assets, but were income to the lessor, like payments of rent." *Burnet* v. *Harmel, supra.*

For the purpose of computing depletion allowable,

*Decisions will be entered under Rule 50.*