CROWELL LAND & MINERAL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 53476.    Filed October 31, 1955.

*Richard L. Crowell, Esq.,* for the petitioner.
*Robert B. Wallace, Esq.,* for the respondent.

OPINION.

OPPER, *Judge:* Respondent determined a deficiency of $1,839.12 in petitioner's income tax for 1949. The issues for decision are whether payments, received by petitioner during 1949 under a "Contract of Sale" of gravel, represent long-term capital gain, as reported by petitioner, or ordinary income, as determined by respondent, and if they represent ordinary income, whether petitioner is entitled to an allowance for discovery depletion. The parties have filed a stipulation of facts, all of which are hereby found accordingly.

Petitioner is a corporation whose income tax return for 1949 was filed with the collector of internal revenue for the district of Louisiana.

Petitioner entered into a "Contract of Sale" dated January 8, 1947, with Gifford-Hill and Company, Inc., a corporation. The contract, which named petitioner the vendor and Gifford-Hill the vendee, provided that the vendor sold to the vendee, with full warranty of title, "All gravel, sand, mixed sand and gravel, railroad ballast and other similar construction materials situated on and under" the piece of land described in the instrument, consisting of about 23.21 acres. Prior to the consummation of the contract there was found to be a substantial deposit of sand and gravel on this land. Tests were made

but it was impossible to determine the exact quantity of sand and gravel thereon.

Under the agreement, "The consideration for this sale and transfer is the payment by the Vendee unto the Vendor, the sum of Fifteen (15¢) cents per cubic yard" for "each and every cubic yard thus mined and removed" payable $1,200 upon the execution of the instrument and $1,200 "at the beginning of each year thereafter during the term of this Contract of Sale" as advance payments, and 15 cents per cubic yard additional when the amount removed equaled the cumulative advance payments. The agreement provided that upon default the contract would be canceled and the vendee would reconvey all of the remaining property to petitioner. The vendee was given 5 years within which to go upon the property and remove the subject material after which its rights terminated and the property was to revert to the vendor, the vendee to execute a reconveyance of the remaining property. The vendee was given the right to construct, maintain, and take away necessary camps, tracks, and other improvements. Any timber cut in the course of removing the materials was to be delivered to and remain the property of the vendor and any damaged timber was to be paid for by the vendee at stated prices. The vendor was to pay ad valorem taxes on the land and the vendee was to pay severance or other taxes imposed for materials removed by it under the agreement. The vendee was to hold the vendor harmless from all damage to persons or property resulting from its operations. Vendor and vendee agreed that any mineral operations of the vendor and the operations of the vendee would be carried on so that neither would interfere with the other.

Petitioner, in 1949, was the fee owner of more than 100,000 acres of land in Louisiana which had been acquired in 1941, and this is the only instance in its history of a contract of any nature concerning sand and gravel deposits underlying any of its land. The sand and gravel deposit in controversy was not carried or listed in the inventory of petitioner.

The purchaser removed the sand and gravel under the contract and thereafter, as a result, the 23.21-acre tract was mostly covered with water.

Petitioner received $14,147.04 under the contract during 1949 and reported the amount as a long-term capital gain. Respondent determined that the amount represented ordinary income.

While the concept of taxable gain implies that a taxpayer shall be authorized to recover his capital in some manner, a number of methods to accomplish this are available. That provision is made for a return of capital as an offset against taxable income is accordingly of little assistance in determining whether a specific transaction

gives rise to ordinary income or capital gain. If capital gain, the investment is to be recovered by means of an allocated basis. Sec. 111 (a), I. R. C. 1939. If ordinary income, an elaborate system has been established by means of depreciation, depletion, and other processes to achieve a similar result. And percentage depletion, section 114 (b) (3) and (4), Internal Revenue Code of 1939, discovery depletion, section 114 (b) (2), Internal Revenue Code of 1939, and unit depletion are all various means of accounting for depletion. Unit depletion, for example, may be available when discovery depletion is not. Cf. *Parker Gravel Co.*, 21 B. T. A. 51, with *Robert Roberts*, 20 B. T. A. 345.

It is clear, however, that if depletion of any kind is available it must be because the taxpayer has retained an economic interest in the mineral in place. *Anderson* v. *Helvering*, 310 U. S. 404; *Burton-Sutton Oil Co.* v. *Commissioner*, 328 U. S. 25. The principle is that as the mineral is removed, and not before, the taxpayer is being deprived of a part of his property and simultaneously using up a corresponding portion of his basis. Presumably since the process of removal is not subject to prophetic anticipation the income is to be accounted for from time to time as it is actually earned. Thus, the present agreement, although it purports to pass present title to all minerals involved, calls for payment, except for the guaranteed amounts, only as the sand and gravel is "mined and removed from said premises."

Not only the time of removal, but the act itself is shrouded in the mists of speculation. At the end of the lease period, even if none is removed, the mineral remaining is not the property of the lessee, but of the lessor. In the usual mineral lease, this results automatically, see, e. g., *Burnet* v. *Harmel*, 287 U. S. 103, while here there is an express provision to that effect. The difference cannot be decisive. Payment for deposits only as removed and retention (or retransfer) of title to the balance are typical indicia of the existence of an economic interest.

It is idle to suggest that these transactions do not somewhat resemble sales, just as a lease of real property has aspects of the day-by-day conveyance of the property to the tenant. As each cubic yard of sand or each ton of coal or metal ore is removed and the owner is paid for that much of the mineral, the transfer is indeed in many ways comparable to the sale of a capital asset. This is so whether the arrangement calls for so much a yard or a ton, *Bankers' Pocahontas Coal Co.* v. *Burnet*, 287 U. S. 308, *Otis A. Kittle*, 21 T. C. 79, or a varying amount depending upon retail price, *William Louis Albritton*, 24 T. C. 903, net profit, *Burton-Sutton Oil Co.* v. *Commissioner*, *supra*, or the like. The continuous deterioration of other

property compensated for by depreciation has also been likened to a series of fractional sales. *United States* v. *Ludey*, 274 U. S. 295. That detail of income tax accounting has not sufficed to transform an item accountable for as ordinary income into capital gain.

The recovery of capital by depletion in the case of minerals is comparable to the process of deducting for depreciation. *United States* v. *Ludey, supra; Choate* v. *Commissioner*, 324 U. S. 1. And by the same token when, under a mineral lease, the property is removed bit by bit and the consideration for it is paid over a number of years, the impelling reason for conferring upon a taxpayer the benefit of capital gains treatment tends to disappear. He does not receive in one year, subject to high surtax rates, the proceeds of an asset which may actually represent the accumulation of increments in value over a long period. See H. Rept. No. 350, 67th Cong., 1st Sess. (1921), p. 10; S. Rept. No. 275, 67th Cong., 1st Sess. (1921), p. 12. On the contrary, provisions in the present agreement expressly granting rights to the use of the surface are spread over the entire 5-year term and are presumably being paid for from year to year. *Burnet* v. *Harmel, supra.*

In the case of the kind of agreement with which we are here confronted, it is of little consequence whether it is described as a lease, royalty agreement, bonus, advance royalty, or other arrangement for periodic payment. *Arthur S. Barker*, 24 T. C. 1160. The typical treatment has been to regard the proceeds as ordinary income. *Burnet* v. *Harmel, supra; Hamme* v. *Commissioner*, (C. A. 4) 209 F. 2d 29, certiorari denied 347 U. S. 954. Both as a consequence and as a compensation the taxpayer has been accorded the privilege of offsetting the receipts by depletion allowances. *Palmer* v. *Bender*, 287 U. S. 551.

As we said in *William Louis Albritton, supra:*

But the nature of the income and the taxpayer's right to a depletion allowance have always been considered as related questions. * * * Another taxpayer under similar circumstances but seeking to obtain the benefit of depletion might make this petitioner's argument in reverse. If we were to sustain petitioners here, that taxpayer would have to be frustrated.

This is reinforced in the case of sand and gravel by the provisions of the Internal Revenue Code of 1939, section 114 (b) (4) (A) (i), as amended by section 319 (a), Revenue Act of 1951, extending to the owners of sand and gravel deposits the benefits of percentage depletion. See also, e. g., *United States* v. *Cherokee Brick & Tile Company*, (C. A. 5) 218 F. 2d 424. If these receipts are to be considered as capital gain recoverable by an allocation of the taxpayer's basis rather than as ordinary income with a corresponding deduction for depletion, it seems to us to lie within the province of Congress to create that

variation in approach.[1]   On the basis of the authorities as they now exist we are unable to sustain petitioner's contention.

Petitioner's alternative claim is that it is entitled to "discovery depletion." No factual foundation for such a deduction appears in the record, and with the case in its present posture, discovery depletion—as opposed to depletion generally—was not available to this petitioner. *Parker Gravel Co.*, *supra*.

Reviewed by the Court.

*Decision will be entered for the respondent.*

_____

MURDOCK, *J.*, dissenting: The petitioner was not engaged in the business of selling sand or gravel or in the business of selling sand and gravel deposits. Counsel for the respondent refers to this contract of sale as a lease, regards it as similar to an oil and gas lease, and claims that the payments received were royalty payments under a lease rather than amounts realized from the sale of a capital asset. His basis for calling the instrument a lease instead of a contract of sale, as it purported to be, is based primarily upon the method of payment and the limitation of 5 years allowed for the removal of the material.

The cases cited by the Commissioner are all part of a line of decisions of which *Burnet* v. *Harmel*, 287 U. S. 103, and *Palmer* v. *Bender*, 287 U. S. 551, are early examples. The rules established by that line of cases are that any one who was entitled to receive a portion of the mineral extracted or produced from a property, a portion of the income from the operation of the mineral property, or an amount based upon the income or the value of the mineral produced from the property, had an "economic interest" in the mineral in place and as that interest was depleted by the production operation the person was entitled to recovery through depletion, particularly percentage[2] depletion based upon the gross income from the property, and the amount he received for his retained share of production or as his share of the profit from or value of the production was taxable as ordinary income rather than gain from the sale of a capital asset.[3]   The *Harmel*

_____

[1] Congress has evidenced its views to that effect with respect to coal, section 325, Revenue Act of 1951, and timber, section 127, Revenue Act of 1943. But that legislation extends only to coal and timber and does not include such other natural deposits as metal ores, *Otis A. Kittle*, 21 T. C. 79, oil and gas or sand and gravel, *William Louis Albritton*, 24 T. C. 903.

[2] The natural deposit here involved was not subject to percentage depletion in 1949, the petitioner claims no depreciation under this sale contention, and both parties recognize that no mining is involved herein. See section 114 (b) (4) ; *Parker Gravel Co.*, 21 B. T. A. 51.

[3] However, *Helvering* v. *Elbe Oil Land Development Co.*, 303 U. S. 372, held that there was a sale of a capital asset even though the seller was to share in the net profits of production.

and *Palmer* cases involved oil and gas leases and most of the cases following them also involved mineral leases under which the taxpayers became parties to the extracting operations so that a part of the gross income from the properties was their income.

The present case presents a different situation. The petitioner sold the material here in question for a fixed price, 15 cents per cubic yard removed. Nothing was to vary that price or the vendee's obligation to pay it. The entire purchase price would be paid in less than 5 years if the material was all removed sooner. The 5 years was not a rental period. The petitioner was not entitled to receive or to be credited with any part of the material as removed. It was not to share in any profit or income derived by the vendee from the removal of the material. The amount the petitioner was to receive did not depend in any way upon the vendee's income from the removal of the sand and gravel or upon the unit or other value of the material removed. The total amount received by the vendee from the sale by it of material removed belonged to it and no part thereof belonged to the petitioner. Cf. *Thomas* v. *Perkins*, 301 U. S. 655; *Anderson* v. *Helvering*, 310 U. S. 404. The contract of sale here was substantially different from the mineral leases involved in the cases cited by the petitioner and the facts that the method of payment here was based of necessity upon the amount of material removed, a time limit for removal was set and the vendee was permitted to come upon the property to remove the purchased material are insufficient to twist this contract of sale into a lease similar to the mineral leases in the cases cited by the Commissioner.

The petitioner argues that the contract was in all respects a contract of sale rather than a lease, the 5 years was regarded as ample time by the parties to permit the removal of all of the material and the method of payment was made necessary by their inability to determine in advance just how much material was there. The Commissioner does not advance any sound reason for regarding this instrument as a lease instead of a contract of sale, and he cites no authority which really supports his argument. The stipulation shows that the gravel deposit was a capital asset of the petitioner which it had held for more than 6 months prior to sale, and the gain should be treated for income tax purposes as a long-term capital gain. This is a stronger case for capital gain treatment than cases involving sales of standing timber where payment was from profits. See *John W. Blodgett*, 13 B. T. A. 1388; *J. J. Carroll*, 27 B. T. A. 65, affd. 70 F. 2d 806; *Estate of M. M. Stark*, 45 B. T. A. 882; *Camp Manufacturing Co.*, 3 T. C. 467; *Isaac S. Peebles, Jr.*, 5 T. C. 14; *Warner Mountains Lumber Co.*, 9 T. C. 1171; *United States* v. *Robinson*, 129 F. 2d 297.

JOHNSON and FISHER, *JJ.*, agree with this dissent.