Estate of S. E. Vance, Deceased, by Margaret Vance, Cyrus B. Vance, and William Vance, His Executors, and Margaret Vance v. Commissioner.
Estate of Vance v. Commissioner
Docket No. 78035.
United States Tax Court
T.C. Memo 1960-167; 1960 Tax Ct. Memo LEXIS 122; 19 T.C.M. (CCH) 904; T.C.M. (RIA) 60167; August 19, 1960
J. Eben Hart, Esq., Liberty Bank Building, Oklahoma City, Okla., for the petitioners. John P. Higgins, Esq., for the respondent WITHEY
Memorandum Opinion WITHEY, Judge: Respondent has determined a deficiency in income tax against petitioners for the taxable year 1954 in the amount of $2,963.05. The sole issue is whether the Commissioner has erred in treating as ordinary income $5,189.20 received by S. E. Vance in the year at issue as the sale price of a quantity of dirt removed from his farm property by the City of Tulsa, Oklahoma. All the facts have been stipulated and are found accordingly. S. E. Vance and petitioner Margaret Vance, sometimes hereinafter referred to as the Vances, were husband and wife living in Tulsa, Oklahoma, during the years 1951 to 1956, inclusive. They timely filed joint *123 income tax returns for those years with the director of internal revenue for the district of Oklahoma. The Vances used the cash receipts and disbursements method for reporting their income and reported on a calendar year basis for all of the years involved herein. S. E. Vance, sometimes hereinafter referred to as the decedent, died on or about September 23, 1958, and petitioner Margaret Vance, Cyrus B. Vance, and William Vance were appointed coexecutors of his estate by the County Court of Tulsa County, Tulsa, Oklahoma. On or about December 19, 1925, the decedent purchased 144.47 acres of land located just west of the Arkansas River on what is now described as Fifty-First Street in the City of Tulsa, Oklahoma, for a total consideration of $13,745.45. Prior to 1951 additional capitalized costs were incurred so that the total cost of the property to decedent on January 1, 1950, was $14,647.00. The principal value of the land when purchased was agricultural and the land was used for that purpose by decedent either by a rental arrangement or actually farming the land himself for the years prior to and including the year 1951. Since 1951 all the land except 15 acres from which the *124 dirt involved in this proceeding was taken has been similarly used for agricultural purposes. The bulk of the 15 acres was leased out for use as a drive-in theater in 1953 and is still being used for such purpose. Prior to January 1, 1950, the United States, the State of Oklahoma, Tulsa County, and the City of Tulsa entered into a contract to construct what is now known as the Fifty-First Street Bridge across the Arkansas River and to construct a highway leading to said bridge, which highway was contiguous to and formed the south boundary of the above-described property. Under said contract the City of Tulsa was required to purchase the right-of-way and furnish any fill dirt required for the construction of the highway on that portion of the land located within the boundaries of said city. At various dates prior to the year at issue the decedent sold parcels of land from his farm to the City of Tulsa for highway and bridge approach construction and use. Such sales and the gain realized thereon were reported in the joint income tax returns of the Vances for the respective years of sale. On May 25, 1954, decedent sold 2.06 acres of the land for a consideration of $5,400, from which *125 sale was realized long-term capital gain in the amount of $5,192.08 which was properly reported in the Vances' joint income tax return for 1954. The remaining cost of decedent's farm on September 1, 1954, was $13,439.38. Prior to January 1, 1951, engineers employed by the City of Tulsa determined that it was economically necessary that the city should obtain in excess of 200,000 cubic yards of fill dirt to be used in the construction of the approach to the Fifty-First Street Bridge from land owned by Sam and Pearl Hardesty and from decedent's farm land which was contiguous thereto. On or about the 26th day of January 1951 the City of Tulsa entered into a contract with Sam and Pearl Hardesty for the removal and use of dirt from the Hardesty land for the construction of the approach to the Fifty-First Street Bridge. Prior to February 22, 1951, engineers employed by the City of Tulsa contacted decedent with the proposal that he enter into a contract with the City of Tulsa permitting the City of Tulsa to remove and use fill dirt to be obtained from approximately 15 acres of his land. After negotiations, decedent entered into such an agreement on February 22, 1951. During the period *126 of their negotiations with the decedent the employees of the City of Tulsa concluded that the city had the power to condemn the property in question, if necessary. The decedent's attorney during the period of negotiations advised him that the city had such power. No proceedings were instituted by the City of Tulsa to condemn the property. Pursuant to its agreement of February 22, 1951, with the decedent, the City of Tulsa prior to February 17, 1953, removed from the approximately 15 acres of his farm land and used 101,679 cubic yards of dirt for which it paid him $5,189.20 on September 7, 1954. The decedent under the terms of the contract received the same price per cubic yard of dirt taken from his land as was paid Sam and Pearl Hardesty per cubic yard for dirt taken from their land. The removal of the top soil from the approximately 15 acres of the decedent's land destroyed the then present agricultural value of that acreage, but the leveling of such acreage required by the above-mentioned agreement, and in fact done, and the construction of the bridge and highway on the boundary of the farm increased its total prospective value. The decedent did not hold dirt for sale to customers *127 in any of the years involved herein nor was the dirt removed from his farm by the City of Tulsa includible in inventory. On January 1, 1954, decedent had excess net capital loss carryover in the amount of $15,500.54 which represented unused net capital loss incurred in the years 1951 and 1952. During 1954 decedent had no losses from transactions enumerated in section 1231 of the Internal Revenue Code of 1954. In executing an agreement with the City of Tulsa for the sale of dirt from his farm property decedent did not do so under a threat of or the imminence of condemnation of the property by the city. The petitioners have failed to show that decedent's agreement with the City of Tulsa for the removal of earth from his farm was entered into under a threat of or the imminence of condemnation. Consequently, the gain from the sale of dirt from decedent's land may not be accorded the treatment provided in section 1231 of the 1954 Code for gains from sales of property used in trade or business entered into under threat of or the imminence of condemnation. However, the question whether under the agreement decedent sold a capital asset or sold property held *128 for sale to customers is another matter. The parties have, it seems to us, resolved the issue by their stipulation of facts. They there agree that the dirt removed by the City of Tulsa from decedent's land was not property held for sale by decedent to customers and was not property of a nature which would be includible in inventory. By a process of elimination then it appears such property must have been capital in nature and that its sale could only produce capital gain. Robert M. Dann, 30 T.C. 499. We think the cited case is controlling here for the facts there are in principle indistinguishable from those of the instant case. Respondent's theory seems to be that decedent, by virtue of the city's performance of its contract in leaving the involved land in such condition that it was usable for drive-in-theater purposes, realized ordinary income and the contract provides for a sale of such character that the proceeds constitute ordinary income. We are unable to follow respondent's reasoning however for in so contending he cites mineral lease cases such as Burnet v. Harmel, 287 U.S. 103, Crowell Land & Mineral Corporation, 25 T.C. 223, revd. *129 242 F. 2d 864, and William Louis Albritton, 24 T.C. 903, affd. in part and revd. in part (C.A. 5) 248 F. 2d 49, as authority for his position. We have considered the application of the principles enunciated by such cases in Robert M. Dann, supra, and rejected them because, as here, we have found such contracts to constitute sales in the entirety of all of the top soil (usable and theretofore used for farming purposes) of a portion of a farm which is a capital asset. There is no question here of a retention in decedent of an economic interest in the asset removed by the city. Once removed the soil became the property of the City of Tulsa and a part of a bridge approach. No further dealing with it on the part of decedent and the city remained to be carried out and decedent's interest of every nature in the dirt ended with its removal. Decision will be entered under Rule 50.