M. C. Puckett and Thelma Puckett v. Commissioner. Gerald C. Puckett and Eva Jane Puckett v. Commissioner.
Puckett v. Commissioner
Docket Nos. 70427, 70428.
United States Tax Court
T.C. Memo 1964-40; 1964 Tax Ct. Memo LEXIS 296; 23 T.C.M. (CCH) 238; T.C.M. (RIA) 64040; 24 Oil & Gas Rep. 369; February 24, 1964
*296 Petitioners granted the Phillips Petroleum Company and its assigns the right to use water underlying certain portions of their property. The petitioners were to be paid $12,000 per year for the grant and the grant was to last for 75 years unless terminated sooner by Phillips. The instrument effecting the grant also provided that petitioners reserved the right to use the water for livestock purposes and that this right was paramount to Philips' right. The water subject to the grant was contained in an aquifer which contained an unknown quantity of water and was subject to a recharge. Held, the water rights grant did not effect a sale of the water in place, and the annual amounts received by petitioners were taxable as ordinary income and not as long-term capital gain. Wm. Bernard Clinton, 1016 National Bldg. *297 , Dallas, Tex., for the petitioners. James F. Hart, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: In these consolidated proceedings [1] respondent determined deficiencies as follows: Docket No.
Year
Deficiency
70427
1954
$10,162.86
70428
1954
4,124.80
The parties have disposed of all but one of the issues. The sole issue remaining for decision is whether $12,000 received by the petitioners in 1954 from the Phillips Petroleum Company in return for the granting of certain water rights to the latter company was taxable as ordinary income or as long-term capital gain. Findings of Fact Some of the facts have been stipulated and are incorporated herein by this reference. M. C. Puckett and Thelma Puckett are husband and wife residing in Fort Stockton, Texas, who timely filed their joint Federal income tax return for the calendar year 1954 with the district director of internal revenue at Austin, Texas. Gerald C. Puckett and Eva Jane Puckett are husband and wife *298 residing in Fort Stockton, Texas, who timely filed their joint Federal income tax return for the calendar year 1954 with the district director of internal revenue at Austin, Texas. During the year 1954, the petitioners were engaged in the ranching business and kept their records and filed their income tax returns on a cash basis. During 1954 and years prior thereto, M. C. Puckett and Gerald C. Puckett were members of a ranching partnership known as M. C. Puckett & Son, (hereinafter referred to as the partnership). M. C. Puckett owned a 75 percent interest in the partnership, and Gerald C. Puckett owned a 25 percent interest. During the period here involved, the partnership was engaged in the ranching business and kept its records and filed its returns on a cash basis. The partnership filed a U.S. Partnership Return of Income, Form 1065, for the calendar year 1954 with the district director of internal revenue at Dallas, Texas. On April 22, 1953, the partnership, by its individual partners, entered into an agreement entitled "Water Rights Grant" with the Phillips Petroleum Company. The agreement provided, in pertinent part, as follows: THIS GRANT, made this 22 day of April, *299 1953, by M. C. PUCKETT and wife THELMA PUCKETT, and GERALD C. PUCKETT and wife, EVA JANE PUCKETT, hereinafter called "Grantors", to PHILLIPS PETROLEUM COMPANY, hereinafter called "Grantee", WITNESSETH: 1. In consideration of the sum of One Hundred ($100.00) Dollars in hand paid to Grantors, * * * Grantors hereby grant and convey unto Grantee, for the term hereinafter stated, and subject to the reservations and covenants hereinafter set forth, all water in, under and that may be produced from the following described lands * * * with the right to investigate, explore, prospect, drill and mine for, and produce water from underground formations underlying said lands, and to lay and maintain pipe lines and power lines, locate, install and maintain pumps, pump stations, tanks and other structures thereon to produce, save, take care of, treat, transport and own such water, together with the right of ingress and egress over and across said lands for such purposes. 2. For the consideration above stated, Grantee shall have the right for a period of one hundred and twenty (120) days from the date hereof to conduct on the lands above described such explorations as it shall desire, to determine *300 whether or not such lands are productive of water in sufficient volume to justify Grantee in developing the lands for the production of water,…. Prior to the expiration of said one hundred and twenty (120) day period, Grantee shall have the right and option to release this grant in its entirety or to retain the grant in its entirety. * * * If Grantee shall elect to retain this grant, it shall, prior to the expiration of said one hundred and twenty (120) day period, pay to Grantors * * * the sum of Twelve Thousand ($12,000.00) Dollars as additional consideration for this grant and the right to terminate the same as hereinafter provided. 3. In the event Grantee shall exercise its option, as above provided, to keep this grant in effect, said grant shall remain in effect thereafter as to all the lands above described for a term of seventy-five (75) years from the date of this grant, provided that Grantee shall have the right to terminate this grant one (1) year from the date hereof or at the end of any yearly period thereafter, by giving Grantors written notice thereof at the address hereinbelow set forth, at least thirty (30) days prior to the end of said yearly period. 4. As a *301 further consideration for this grant, Grantee agrees to pay to Grantors, for each year this grant remains in effect after the first year, the sum of Twelve Thousand ($12,000.00) Dollars. The said sum shall be paid to Grantors or deposited to the credit of Grantors in the bank above named promptly after the commencement of the yearly period for which it is paid. * * *
7. Grantors hereby expressly reserve to themselves, their heirs and assigns, the following mentioned properties and rights in reference to the above described lands: (a) Grantors reserve to themselves all existing water wells, water pumps, water tanks, and water pipe lines now owned by Grantors on any of the lands hereinbefore described. (b) Grantors reserve the right to produce and use water from Grantors' present and future wells for livestock raising and mineral development purposes. (c) Grantors reserve the rights in the surface, minerals, and sub-surface in the lands hereinbefore described insofar as such rights are not inconsistent with the rights expressly granted by this grant. (d) Grantors reserve, and are hereby granted, the right to tap the water lines of Grantee, at Grantors' sole risk and expense, *302 for the purpose of obtaining water for livestock only, and Grantee shall provide one two-inch tap with suitable connection valve, for the use of Grantors in placing livestock watering troughs on the lands above described; provided, however, that said water taps and connection valve shall be limited to one per section of land upon which is located a water well or water pipe line of Grantee. Grantors' right to take water for livestock watering purposes only shall be a paramount right over the water utilization privileges of Grantee. This is to say, Grantors shall have first call on any water produced, for stock watering purposes only even though the taking of such water for such purpose reduces the volume of water available to a point that it is not sufficient for Grantee's purposes. Grantee, however, shall have no obligation to produce water, when, in its sole judgment, the volume of water available from wells is insufficient for Grantee's purposes. Nothing herein shall be construed to permit Grantee or Grantors to waste or cause to be wasted any of said water, and Grantee shall at its expense construct and maintain on the above described land any and all dirt dams and dirt storage *303 tanks reasonably required to impound and save, insofar as practicable, all surplus water produced by Grantee under and by virtue of the terms hereof. 8. Subject to the rights of Grantors in the test wells and casing therein and cap thereon drilled by Grantee within the first one hundred and twenty (120) days from the date hereof as provided in paragraph 5 above, Grantee shall have the right at any time during or after the expiration or termination of this grant to remove all property and fixtures placed by Grantee on said lands, including, but not limited to, the right to draw and remove all casing, without the consent of Grantors. On June 10, 1953, Phillips Petroleum Company assigned the said Water Rights Grant to the Permian Basin Pipeline Company, a corporation. During 1953, Permian Basin Pipeline Company (hereinafter referred to as Permian) constructed a gasoline processing plant on the partnership's land subject to the Water Rights Grant, and the water acquired pursuant to said Grant was used in this plant and is being continuously used in said plant at the present time. The plant went into operation in 1954 and uses approximately 700,000 gallons of water each day. The water *304 supplying the plant is contained in an aquifer consisting of two sand formations which are referred to as Paluxy sand and Trinity sand. The Trinity sand is constantly being recharged with water, and there is some recharge in the Paluxy sand. The water is pumped from 3 wells, each of which is approximately 800 feet deep. Since the plant first commenced operations there has been no shortage of water, and there has been no significant change in the static or normal water level in the wells. It is impossible to determine the amount of water contained in the two sand formations supplying the plant or when, if ever, the water in the two sand formations will be exhausted. Pursuant to the provisions of the Water Rights Grant, Permian made payments to the partnership of $12,000 on August 21, 1953, and $12,000 on August 13, 1954. The partnership had held the land covered by said Water Rights Grant since 1947 and reported the payments as long-term capital gain. In his statutory notices of deficiency respondent increased petitioners' share of partnership income by disallowing the longterm capital gain and treating the $12,000 received in 1954 as ordinary income. Opinion The sole issue *305 for decision in this case is whether, as petitioners contend, they made a sale of the water in place, so as to entitle them to treat their gain as long-term capital gain, or as respondent contends, they merely granted Phillips Petroleum Company and its assigns a right to remove water on an annual basis which would cause the amounts received by them to be treated as ordinary income. In an issue of this sort it is incumbent upon the Court to determine whether the transaction resulted in a complete and immediate conveyance of the deposits in place (water in this case) so that the owner no longer retained any interest in such deposits. If the transaction did, then it is a sale and petitioners are entitled to treat their gain as capital gain. Samuel L. Green, 35 T.C. 1065 (1961); Burton-Sutton Oil Co. v. Commissioner, 328 U.S. 25 (1946); United States v. White, 311 F. 2d 399 (C.A. 10, 1962). In arriving at the true character or substance of the transaction, [2] the courts have considered such factors as the wording and tenor of the contract, Otis A. Kittle, 21 T.C. 79 (1953), affd. 229 F. 2d 313 (C.A. 9, 1956); Robert M. Dann, 30 T.C. 499 (1958); *306 Albritton v. Commissioner, 248 F. 2d 49 (C.A. 5, 1957, affirming on this point 24 T.C. 903 (1955); Charles H. Remer 28 T.C. 85 (1957), affd. 260 F. 2d 337 (C.A. 8, 1958); Burnet v. Harmel, 287 U.S. 103 (1932); and Wesley W. West, 3 T.C. 431 (1944), affd. 150 F. 2d 723 (C.A. 5, 1945), certiorari denied 326 U.S. 795, 796 (1946); the dominant purpose of the agreement, Robert M. Dann, supra; Crowell Land & Min. Corp. v. Commissioner, 242 F. 2d 864 (C.A. 5, 1957), reversing 25 T.C. 223 (1955); Lambert v. Jefferson Lake Sulphur Company, 236 F. 2d 542 (C.A. 5, 1956); Gowans v. Commissioner, 246 F. 2d 448 (C.A. 9, 1957), reversing and remanding a Memorandum Opinion of this Court; Maude W. Olinger, 27 T.C. 93 (1956) (but see Samuel L. Green, supra, where reliance upon such a factor is criticized); the presence of an initial substantial cash payment, Samuel L. Green, supra; Maude W. Olinger, supra; Charles H. Remer, supra; Helvering v. Elbe Oil Land Co., 303 U.S. 372 (1938); *307 the ability of the transferee to terminate without further obligation to pay the alleged purchase price, Lincoln D. Godshall, 13 T.C. 681 (1949); and the retention of rights by transferor in the minerals allegedly conveyed, United States v. White, supra; Crowell Land & Mineral Corporation, 25 T.C. 223 (1955), reversed 242 F. 2d 864 (C.A. 5, 1957); Burton-Sutton Oil Co. v. Commissioner, supra; West v. Commissioner, 150 F. 2d 723 (C.A. 5, 1945), affirming 3 T.C. 431 (1944), certiorari denied 326 U.S. 795, 796 (1946); Charles H. Remer, supra; and Maude W. Olinger, supra.
In the instant case, the agreement *308 provided, in effect, that for a period of 75 years Phillips Petroleum Company or its assigns, upon the payment of $12,000 each year, could take water from certain sections of petitioners' property. In addition, the agreement could be terminated by Phillips at the end of any one year upon 30 days prior written notice, and it reserved certain water rights to petitioners, namely, the right to produce and use water from petitioners' present and future wells for livestock raising and mineral development purposes, and the right to tap the water lines of Phillips for the purpose of obtaining water for livestock. Finally, the agreement specifically provided that petitioners' right to take water for their livestock shall be a paramount right over the water utilization privilege of Phillips and its assigns. We believe there are numerous factors present in the instant case which are fatal to petitioners' claim that a sale of their water rights was effected. Firstly, the tenor of the grant is in the nature of a lease rather than a sale, i.e., the conveyance is for a limited "term"; the consideration is a fixed annual amount having no relation to the amount of water taken or to the value of the *309 water resources; and the grantee has the right to terminate at the end of any one year without further obligation to the grantors. Secondly, there was no substantial initial payment, a common characteristic of a sale. Thirdly, the agreement contained no provision for reconveyance at the expiration of the full term or upon an earlier termination by the grantee. Such a provision for reconveyance would be common if the parties had actually intended initially to transfer title to the water to the grantee. [3] Fourthly, the reservations contained in the agreement whereby petitioners retained a paramount right to use of the water for livestock purposes are definitely incompatible with the proposition that a sale was effected. It is difficult to see how petitioners can claim they made a complete sale of the water in place when at the same time they retained a right superior to that of the alleged purchaser. The fact that petitioners' reserved rights in the grantee's wells related only to livestock uses [4] does not measurably detract from the significance of such a reservation in view of the fact that there was no contractual limitation on the amount of water petitioners could take for such *310 purposes. Finally, since the duration of the grant was for a maximum term of 75 years, petitioners retained and possessed a reversionary interest in the water, a circumstance more prevalent in leases than in sales. Petitioners suggest, however, that the revesting of their interest in the water at the end of the term was so remote or improbable as to be of no consequence. In view of our findings that the aquifer was being recharged, that it was impossible to measure the exact amount of water contained in the aquifer, and that the grantee could terminate without further obligation to petitioners at the end of any one year, we are unable to conclude that petitioners' reversionary interest was of no consequence. In support of their position that a sale took place, *311 petitioners place much reliance upon the cases of Crowell Land & Min. Corp. v. Commissioner, supra, and United States v. White, supra. We think the facts in both of these cases differ from those presented here and that as a result neither case is authority for the petitioners' position in this case. In Crowell the contract was entitled "Contract of Sale," the parties were referred to throughout as "vendor" and "vendee," the amounts to be paid related to quantities of minerals taken, the vendee at the end of the term was obligated to reconvey the property to the vendor, and the court found as a fact that no mineral would revert to vendor since it had already been removed. In White the vendor received a substantial initial payment, the agreement used the words "sold" and "sell" and the vendor retained no interest in the minerals conveyed. On the basis of the foregoing, we are of the opinion that the petitioners did not make an absolute and immediate sale of the water underlying their property. Accordingly, we hold that the amounts received by petitioners in 1954 from Permian are not the proceeds of a "sale" within the meaning of section 1231 of the Internal Revenue Code *312 of 1954 and that consequently said amounts are taxable as ordinary income. Decisions will be entered under Rule 50. Footnotes
1. The parties filed a joint motion to consolidate these proceedings on September 10, 1963. The motion was granted by the Court on the same day.↩
2. The true character or substance of the transaction has been the criterion adopted by this Court and others in determining tax incidence in these situations. Wesley W. West, 3 T.C. 431 (1944), affd. 150 F. 2d 723 (C.A. 5, 1945); Linehan v. Commissioner, 297 F. 2d 276 (C.A. 1, 1961), reversing 35 T.C. 533 (1960); and Lambert v. Jefferson Lake Sulphur Company, 236 F. 2d 542↩ (C.A. 5, 1956).
3. See and compare, Crowell Land & Min. Corp. v. Commissioner, 242 F. 2d 864 (C.A. 5, 1957), reversing 25 T.C. 223 (1955); and Albritton v. Commissioner, 248 F. 2d 49 (C.A. 5, 1957), affirming on this point 24 T.C. 903↩ (1955). 4. It is also to be noted that petitioners reserved the right to use water from their own wells for livestock and mineral development purposes.↩