WARNER MOUNTAINS LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10154.   Promulgated December 23, 1947.

*L. Stanley Mauger, Esq.*, for the petitioner.
*William H. Best, Jr., Esq.*, for the respondent.

### OPINION.

Murdock, *Judge*: All of the events upon which the present controversy rests occurred during the period from the creation of the syndicate up to the end of 1930, when the petitioner corporation took over all of the assets and assumed the liabilities of the syndicate in exchange for its stock. The petitioner states in its brief that the syndicate was an association taxable as a corporation. Counsel for the respondent stated at the trial that the tax-free character of the transaction whereby the petitioner acquired the assets of the syndicate is not disputed and the petitioner is claiming the same basis which the property had in the hands of the syndicate. The opposite party has not taken exception to those statements and their correctness will be assumed. Section 113 (a) (6) of the Internal Revenue Code provides, as did the same section of the Revenue Act of 1928, that the basis of property

acquired in a tax-free exchange shall be the same in the hands of the transferee as it was in the hands of the transferor. Thus, one question to be determined in this case is, Should the syndicate or the corporation have capitalized any of the items here in controversy as a part of the cost or basis of the timber which the petitioner sold during the taxable years 1940 through 1943. The parties do not discuss the questions of how total cost or basis of the property as a whole is to be divided between land and timber, the rate to be used, or whether the deduction is to be for depreciation or depletion. The Court assumes that those questions are not in issue.

The fee of $500 paid to an attorney for examining the title to the property was a part of the cost of that property. $17,063.18 paid for cruises of timber not connected with any sale was not a current expense, but, like the cost of a survey of newly acquired property, was properly chargeable to capital account as a part of the cost or basis of the timber. *Frishkorn Real Estate Co.*, 15 B. T. A. 463. One hundred shares of preferred stock of the petitioner were issued to compensate one of the syndicate participants for his efforts in having a standard gauge railroad built to the property. That, likewise, was not a current expense but, adding value to the property, was properly chargeable to capital account. Cf. *Caflisch Lumber Co.*, 20 B. T. A. 1223. No point has been made as to the value of the stock and it will be assumed to have had a value, equal to its par value, of $10,000. Attorney's fees paid for services rendered in organizing the syndicate and in organizing the corporation are capital items, but are not a part of the cost or basis of property or timber owned either by the syndicate or by the corporation. *Hotel De France Co.*, 1 B. T. A. 28. Such organization expenses relate to the entity itself rather than to any property which it owns. Fees paid in collecting damages for trespass are not capital expenditures, but are chargeable against the damages collected. The petitioner can not derive any benefit from other attorney's fees, since the record fails to disclose adequately the purposes for which they were paid.

The largest amount which the petitioner claims should have been added to the cost of the property as a capital expenditure is $80,000. Allegedly, the syndicate paid that for the option on the property, since syndicate participation certificates in the total amount of $80,000 were issued to the two men who brought the option to the syndicate. The other syndicate participants contributed $80,000 in cash for a like amount of participation certificates. A corporation acquiring an option under circumstances similar to those just described would take as its basis on the option the same basis which the option had in the hands of the transferor. Sec. 202 (c) (3) (B), Revenue Act of 1921, and secs. 113 (a) (6) and 112 (b) (5), I. R. C. The record does not show that the option had any cost to the two participants who contrib-

uted it to the syndicate and, consequently, the petitioner has failed to show that the syndicate or the petitioner acquired any basis for property as a result of the acquisition of the option in 1923.

The next largest amount which the petitioner seeks to capitalize as a part of the cost of the property is the total of amounts paid for unsuccessful efforts to sell the property. The record gives practically no detail in regard to those expenditures. The $20,001.69 was described by the petitioner's only witness as "amounts paid to this man Slattery who brought this thing to my uncle, while he gallivanted around the country at the syndicate's expense—ostensibly trying to sell the property." There came a time when his efforts to sell the property had failed and the syndicate terminated that arrangement with Slattery. The amount paid for his unsuccessful efforts to sell the property might, under some circumstances, have been deducted as ordinary and necessary expenses or, perhaps, the total might have been deducted as a loss when the employment was terminated. Cf. *H. B. Perine*, 22 B. T. A. 201; *Homer L. Strong*, 14 B. T. A. .902; *Pittsburgh & West Virginia Railway Co.*, 9 T. C. 268. Expenses incident to an actual sale of property are sometimes offset against the proceeds of the sale in the computation of the gain. *Spreckles* v. *Helvering*, 315 U. S. 626; *Baltimore & Ohio Railroad Co.*, 29 B. T. A. 368; affd., 78 Fed. (2d) 460.; *Don A. Davis*, 4 T. C. 329; affd., 151 Fed. (2d) 441. But here the petitioner seeks to capitalize expenses of unsuccessful efforts to sell property. It cites no authority to support that contention. Those expenditures did not result in the acquisition, development, or improvement of property or create any benefit having a useful life beyond the taxable year in which they were made. Apparently, the only reason for capitalizing them in this case is that otherwise they will not be recouped by this taxpayer through any deduction. Hard luck of that kind is not a sufficient reason for doing something not authorized by the statute. They may not be recovered through deductions under section 23 (l) or (m).

The petitioner contends that other expenditures were carrying charges. Those items consist of interest allegedly paid or accrued on the "loans" from participants, local taxes, cost of fire protection and care, expenses of telegraph, telephone, and stationery, and bookkeeping expenses. The syndicate never deducted those on any returns and, therefore, the right to charge them to capital account is claimed, with the result that they can now be included in the adjusted basis of the property in the hands of the petitioner for the purpose of computing a deduction.

Section 113 (b) (1) (A) of the code, as it applied to the years 1940 and 1941, provided that the basis of cost of property should be adjusted "For expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on

unimproved and unproductive real property," except where deductions had been taken for such items in determining net income for prior years. That section, as it applied to the years 1942 and 1943, was substantially the same, except for the omission of the words "including taxes and other carrying charges on unimproved and unproductive real property." The respondent recognizes that the change was to make the law somewhat more liberal. The regulations under both provisions allowed taxes and carrying charges on unimproved and unproductive real estate to be capitalized. See Regulations 103, sec. 19.113 (b) (1)–1; Regulations 111, sec. 29.24–5 (b). Neither the statute nor the regulations define carrying charges. The Commissioner has made an argument in his brief that the items in question may be capitalized or not, depending upon the law and regulations applicable to the year in which the expenditures were made or incurred. There was some confusion in the decisions and the regulations for a few years. See *Ernest A. Jackson*, 9 T. C. 307, in which the history of the treatment of carrying charges was reviewed. The petitioner argues that the provisions of the Internal Revenue Code mentioned above are controlling. The conclusion was reached in the *Jackson* case that the Congressional purpose was always the same, and later enactments, beginning with the 1932 Act, authorizing the capitalization of carrying charges on unproductive property, were merely for the purpose of clarification. Therefore, the question here need not be complicated by the vacillation which occurred prior to the 1932 Act.

The Commissioner has allowed the capitalization of the interest paid to the sellers on the deferred installments of the purchase price of the property. He must have done that upon the theory that the property was unimproved and unproductive and the interest was a carrying charge. He does not make any argument in his brief that the property was not unimproved or unproductive for present purposes. Although the meaning of "carrying charges" is not defined, nevertheless, it is clear that taxes are included. The Commissioner has not suggested any valid reason why the local taxes in the amount of $26,837.36 should not be capitalized. Another expenditure directly related to carrying the property was the $4,622.13 paid for fire protection and care. That item may also be capitalized as a carrying charge.

It is not necessary to decide whether telegraph, telephone, and stationery expenses and bookkeeping expenses might ever be capitalized as carrying charges, because the record does not show any detail in regard to the expenditures classified under those headings or show the extent, if any, to which those expenditures are directly attributable to "carrying" the property and which part, if any, thereof represented current expenses of leasing the property for grazing, of collecting and

recording other income, of carrying on efforts to sell the property, and of maintaining the organization. Expenditures made in unsuccessful efforts to sell the property, rather than to carry it, may not be classified as carrying charges.

The largest amount which the petitioner contends should be capitalized as a carrying charge is about $200,000, described as interest on the so-called temporary and preferred loans represented by money advanced by certain of the participants to enable the syndicate to pay the deferred installments of the purchase price of the property, the interest thereon, the taxes, and the other expenditures made by the syndicate. The respondent argues that the funds advanced by the participants were not true loans; there was no agreement in regard to the payment of interest on those advances and no interest could have been collected thereon; in any event, no interest was ever paid or accrued on those amounts and, consequently, the basis of the syndicate never could have included any theoretical interest on those amounts. He calls attention to the provision of the regulations that the interest which can be charged to capital account as a carrying charge shall not include "theoretical interest of a taxpayer using his own funds."

One of the requirements of the statute as a prerequisite to capitalization of a carrying charge is that the interest be paid or accrued. A syndicate with only $80,000 of capital which is engaged in buying an unproductive piece of real estate at a cost of $800,000 obviously has no means of paying interest currently on money advanced by participants in the syndicate without an impractical pyramiding of the borrowing process. Those participants must have realized that their only hope or expectation of ever recovering the advances and of realizing any additional returns on their investment would be through a profitable sale of the property, in whole or in part, and a division of the proceeds of that sale. It was recognized when the corporation was formed in 1930 that those participants who had advanced money should have a larger share in the new corporation by reason of the fact that they had never received any interest on the money advanced by them, and preferred stock was issued to cover theoretical interest on the advances. None of the participants ever reported in his income tax return that he had received any interest on his advances. Cf. *Charles A. Collin*, 1 B. T. A. 305. The question of interest apparently never arose until some time in 1930, not long before the organization of the petitioner.

Since the syndicate never agreed to pay interest, never currently paid or accrued any interest, and had no practical way of doing so, and, since the advances were turned into preferred stock, it might be reasonable to conclude that the advances were intended to be capital investments made by the participants, rather than loans. Cf. *Swoby Corporation*, 9 T. C. 887. Congress, in such a situation, did not mean

to allow the pyramiding of interest charges that would result from borrowing money to pay the purchase price, borrowing money to pay the interest on amounts thus borrowed, borrowing money to pay the interest on those loans, etc., *ad infinitum*. The interest which the petitioner seeks to capitalize is not interest on the deferred purchase price, upon a purchase money mortgage, or the equivalent (the Commissioner has already allowed the interest paid on the deferred purchase price payments), but is something in addition to carrying charges of that kind and represents alleged interest on alleged debts contracted to pay the carrying charges themselves. Not only is there no authority in the statute or regulations for capitalizing theoretical interest of that kind, but its capitalization would be outside the purpose and spirit of those statutes and regulations.

The Commissioner has argued that none of the alleged interest was ever paid. The record shows clearly that none of it was ever paid or accrued currently, but $4,273.91 was paid on April 24, 1930, for the benefit of one of the participants and was accounted for as a payment of interest due him on loans. The remaining part of the approximate $15,000 which the petitioner contends was actually paid was not paid, but was merely a bookkeeping entry under date of December 31, 1930. A journal entry as of that date purports to account for $11,037.85 as interest paid on temporary loans. The explanation contained in the entry is as follows:

| | |
|---|---|
| 7/28/30 Cr. Chas. S. Hebard_____ | 4695.67 |
| 11/28/30 Cr. Chas. S. Hebard_____ | 6342.18 |
| | 11,037.85 |

The above were monies Rec'd. by C S Hebard. From Mr Morgan Hebard—on the same day—Mr. C S Hebard was to loan these amts to the Syndicate, and on the same day or the next the Syndicate should have paid these amts back again to Mr C S Hebard on a/c of Interest due the latter on his Preferred Loans first made. The Items should have gone thru these records Through the Check & Cash Books but illness prevented and hence they are thus entered here after Consultation with FVH Esq. Atty. GHS.

The fact of the matter is that C. S. Hebard, having advanced money to the syndicate, received some money from his son which he regarded as a taking-over by the son of a part of his advances to the syndicate, although the money advanced by the son was advanced to the father and not to the syndicate. It also appears that the son deliberately refrained from advancing any funds to the syndicate. Shortly afterwards preferred stock of the petitioner, which otherwise would have gone to the father, was issued to the son, apparently in recognition of the loan which the son had made to the father. Obviously, there was no payment of interest by the syndicate in that transaction. The payment of $4,273.91 on April 24, 1930, requires no

change in the conclusions reached partly upon the fact that the syndicate did not pay or accrue interest.

The issuance of stock by the petitioner in recognition of the advances by the syndicate participants and also on the basis of a theoretical computation of interest on those advances, does not entitle the petitioner to capitalize such alleged interest payments as carrying charges which the syndicate could not capitalize. The petitioner is not able to point to any authority, statutory or otherwise, to support its contention.

The final contention of the petitioner is that money which it received in 1943 under contracts for cutting the timber represented proceeds from the sale of capital assets and whatever gain was involved should be regarded as a capital gain. That contention is sustained. *Isaac S. Peebles, Jr.*, 5 T. C. 14; *Estate of M. M. Stark*, 45 B. T. A. 882.

*Decision will be entered under Rule 50.*