OPINION. Turner, Judge: The primary question is whether or not petitioner’s interests in the lands comprising the Homeland Assembly were property held by him “primarily for sale to customers in the ordinary course of his trade or business,” under the provisions of section 117 (a) of the Internal Revenue Code of 1939.[5] If they were not so held, the gains realized by him on their sale in the taxable year were properly reported as long-term capital gain, and the respondent was in error in determining otherwise. On the evidence of record, we have set out in our Findings of Fact a fairly detailed picture of petitioner’s activities relating to the assembly properties and to their ultimate sale, including the facts leading up to the planning of the venture with Holland, the testing of the various properties for phosphate, the steps necessary to obtain needed or necessary financing, the purchasing of various of the individual properties making up the assembly, negotiations looking to their sale, and the actual sale. And, in our opinion, the facts so found lead to and require the conclusion reached, namely, that petitioner acquired and at all times held his interests in the said properties primarily for sale to a customer or customers; that his activities in acquiring, holding, and selling those interests were such as to constitute the carrying on of a business by him; and that the sales were made in the ordinary course thereof. We have not overlooked the stated conclusions of petitioner as to his purpose and intent, or as to the amount of time required of him in the activities involved, nor the fact that a much greater portion of his time may well have been consumed in his cattle ranch and timber-growing ventures. Suffice it to say, that after the failure to sell the Holland, Snell, and Gassett properties, on the last two of which petitioner was to receive a broker’s commission, and the first planning of the assembly by him and Holland, his activities extending over more than 2 years of time in the doing of those things required to examine and prospect the properties, to raise the money necessary for their acquisition, to negotiate and make actual purchase of the properties needed to round out the assembly, and to conduct and carry on the negotiations which ultimately resulted in sale, were such as to convince us that those activities must be regarded as the carrying on of a business, within the meaning of section 117 (a), even though the hours, days, or weeks actually consumed were relatively small when compared with the over-all lapse of time from the beginning of the venture until it was closed. The fact that the whole venture, at least insofar as the properties sold in 1950 were concerned, was closed out by their simultaneous sale to a single customer, is apparently regarded by petitioner’s counsel as providing strong support for a contrary conclusion. Possibly the thought back of the argument is that in so many of the land venture cases, wherein the question was the same as that in the present case, the controlling activities were directed to the platting and subdividing of a single parcel of land and the selling, by many sales, of the individual units resulting from such platting and subdividing. Here, of course, we do have a reverse situation, but in the circumstances of this case, that fact does not indicate of require a conclusion that what was done did not constitute the carrying on of a business. The lands here were mineral-bearing lands, but their value and marketability as such called for their assembly into a unit or group sufficiently large to attract the best and most obvious customers, namely, the phosphate-mining companies. In either instance, the question presented must turn on the same considerations, namely, whether the activities in the platting, subdividing, and selling of a property in smaller units, on the one hand, and the examining, prospecting, assembling of the properties into a unit or group, and the selling of the properties as a group, on the other hand, were such as to constitute the carrying on of a business, the answer to which in the instant case we have already stated above.[6] We have examined the cases cited and relied upon by petitioner, and in none of them do we find support for the conclusion sought herein. On first impression, Isaac S. Peebles, Jr., 5 T. C. 14, might be regarded as somewhat comparable to the instant case and to support the petitioner’s position. In that case, it was held that the profits realized from the sale of timber from an acreage of approximately 2,000 acres, which had been acquired in parcels over a period of 5 years, constituted capital gain, for the reason that the sale of the timber was not made in the ordinary course of a trade or business carried on by the taxpayer. No point was made, however, that the acquisitions of the various parcels over the 5-year period were other than casual acquisitions, the contention being that the activity in harvesting the timber and the fact that it was paid for only as harvested made of the selling of the timber the conduct of a trade or business, under the statute. In short, aside from the harvesting of the timber, which was the activity of the purchaser, not of the taxpayer, and of the terms under which he was to pay for the timber harvested, there was no suggested basis for any claim that the taxpayer, namely, the seller, was carrying on a trade or business with respect to the timber, rather than a passive investor therein realizing on his investment through the sale. In holding that the sale of the timber was not made in the ordinary course of a trade or business carried on by the taxpayer, it was pointed out that the harvesting operation was that of the purchaser of the timber, and not that of the taxpayer, and could not be so regarded as to bring him within the provisions of section 117 (a) as carrying on a trade or business in respect of the property. Similarly, Warner Mountains Lumber Co., 9 T. C. 1171, and Estate of M. M. Stark, 45 B. T. A. 882, are not in point. Other cases from which petitioner seeks support are even more remote, and reference to them would in our opinion serve no useful purpose. In the instant case, the facts as we view them very clearly refute any suggestion that petitioner’s purchases of his various interests in the properties making up the Homeland Assembly were casual purchases, or that he acquired, held, and sold such properties as a passive investor, or otherwise stated, merely as an investor. In addition to his profits from the sales of the phosphate-bearing lands, petitioner realized gain from the sale of 2 other and separate parcels of land, which gain he likewise reported as long-term capital gain. The respondent in his determination of deficiency determined that those gains also constituted ordinary income. The petitioner, as in the case of the gains from the phosphate-bearing lands, alleged error on the part of the respondent in that determination. At the trial, it was the understanding of the Court and of petitioner’s counsel that respondent conceded error as to the gain realized on the 2 parcels indicated, and we regard the record as justifying that understanding. The respondent, on brief, argues that the said gain is still at issue and that he was only conceding the correctness of the amount of gain reported. Whether the issue be regarded as conceded, or not, the facts are sufficiently clear, and we conclude and hold, that these 2 parcels of land were not in any way connected with any business carried on or conducted by petitioner, and he was justified in reporting the gain on their sale as long-term capital gain. Decision will he entered under Rule 50. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. — As used in this chapter— (1) Capital assets. — The term “capital assets” means property held by the taxpayer (whether or not connected with his trade or business), but does not include— (A) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; F or a case in which an argument somewhat comparable to that here discussed was advanced, and the court, in its opinion, noted that there are instances where land may derive its chief value from its availability as a unit or undivided tract and it could readily be seen that it might be better business to hold a large tract for sale as a unit, see Stockton Harbor Industrial Co. v. Commissioner, 216 F. 2d 638, 655, 656, affirming a Memorandum Opinion of this Court.