GEORGE J. HINTENBERGER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hintenberger v. Commissioner
Docket No. 5302-75.
United States Tax Court
T.C. Memo 1977-414; 1977 Tax Ct. Memo LEXIS 28; 36 T.C.M. (CCH) 1683; T.C.M. (RIA) 770414; November 30, 1977, Filed George J. Hintenberger, pro se. James F. Kearney, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined *29 a deficiency of $879 in petitioner's Federal income tax for the year ended December 31, 1972. Certain issues raised by the pleadings have been conceded by respondent, leaving the following for decision: (1) Whether petitioner has adequately substantiated an alleged loss in the amount of $5,120 from the operation of a business in Thailand; (2) whether petitioner has established that in the operation of and upon the disposition of rental property he sustained a loss in excess of $180 (the amount which respondent concedes petitioner lost upon the foreclosure of his rental property); and (3) whether $2,500 owed petitioner by a Mr. Tsui is deductible by petitioner in 1972 under section 166, I.R.C. 1954, [1] as a business bad debt. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. At the time the petition in this case was filed, petitioner's legal residence was in Hillside, New Jersey. For the taxable year 1972, petitioner and his wife filed a joint Federal income tax *30 return with the District Director of Internal Revenue in Philadelphia, Pennsylvania. Issue 1. Business loss
Petitioner was one of three partners in Sales Union Company (SUCO), a partnership formed in 1968 in Thailand to market package units for water purification and to represent water softening and purification manufacturers. In addition, petitioner operated a sole proprietorship known as Sales Union of New Jersey (SUNJ), which provided credit and financing to SUCO and supplied the partnership with materials. The SUCO partners contemplated that petitioner would supply the money to purchase the goods held for sale by the partnership. In addition, petitioner was to provide technical assistance and engineering expertise. The other partners in Thailand would provide housing, entertainment, transportation, advertising and customer contacts with industrial groups and the government. Customarily, as inventory was sold, petitioner would first recover the amount he had expended to purchase the goods. Profits were then divided among the three partners, petitioner receiving 45 percent thereof. SUCO was not a prosperous business venture, and in 1969 petitioner took on another *31 job so that he could purchase additional goods and equipment for SUCO. In 1970 petitioner left Thailand to take another, higher paying job in Vietnam. During 1972 petitioner was employed in Vietnam and Thailand by Philco-Ford and Trans-Asia. The SUCO business in Thailand came to a virtual standstill when petitioner left the country. In 1971 petitioner traveled back to Thailand and agreed with the SUCO partners to an arrangement whereby the SUCO inventory and equipment would be sold off so that petitioner could gradually recoup his investment in SUCO. Petitioner had invested funds in SUCO's inventory and equipment. On his Federal income tax return for 1972, petitioner claimed a loss with respect to the SUCO business. On Schedule C, "Profit (or Loss) From Business or Profession," of his Form 1040, petitioner claimed that SUCO's gross receipts from sales totaled $6,000, while the cost of the goods sold totaled $9,500, thus resulting in a loss of $3,500. In addition, petitioner claimed a section 162 business deduction of $420, representing the amount claimed to have been expended for four trips from Vietnam to Thailand to oversee the SUCO operation. Also, petitioner deducted $1,200, *32 which he claimed represented the total amount expended by SUCO for rent. The net loss claimed from SUCO operations thus totaled $5,120. In his notice of deficiency respondent disallowed the loss claimed to result from the SUCO operations, in effect allowing petitioner cost and expense deductions to the extent of SUCO's gross receipts. Issue 2. Loss in Operation of and From Disposition of Rental Property
In 1964 petitioner acquired a three-family house in Newark, New Jersey, at a cost of $16,300. Petitioner did not make a downpayment. Rather, he obtained a mortgage loan for the full purchase price. The mortgage was for 30 years with First Jersey Savings and Loan Association and was guaranteed by the Veterans' Administration (V.A.). The structure petitioner acquired was approximately 50 years old. It was acquired, at least in part, for rental purposes. From 1964 until April of 1968, however, one of the dwelling units was occupied by petitioner's former wife. While petitioner was employed overseas, he entrusted his brother with the responsibilities of collecting rents, making repairs, and making the mortgage payments as they fell due. On April 25, 1972, the property *33 was foreclosed upon. With a bid of $15,818.59, First Jersey Savings and Loan Association was the highest bidder at the sheriff's sale. Because of the V.A.'s guarantee, First Jersey subsequently conveyed the house to the Veternans' Administration for a consideration of $15,818.59. The Veterans' Administration determined that the latest net appraisal value of the property immediately prior to sale was $10,400 and on this basis determined petitioner's indebtedness to the Veterans' Administration as follows: Amount paid by V.A. for house
$15,818.59
Less: Net appraised value of
$10,400.00
property at time of
sheriff's sale
Credits
289.82
$10,689.82
10,689.82
Petitioner's Principal Indebtedness to V.A.
$ 5,128.77
Petitioner in his petition claimed an ordinary loss on the foreclosure of the property. Petitioner computed his claimed loss as follows: V.A. Indebtedness
$ 5,128.77
Principal paid on house
2,470.00
Closing costs
1,200.00
Travel from Vietnam to U.S. in
connection with foreclosure
876.00
Lawyer's fee
65.00
Repairs - materials
750.00
Repairs - labor (petitioner and
hired help)
450.00
Rents collected by brother (in
undetermined year) and not
turned over to petitioner
3,000.00
$13,939.77
*34 Petitioner's 1972 return reflects neither operating expenses nor income from this property. Petitioner has never taken depreciation deductions with respect to this property. Petitioner did not claim a loss from the foreclosure of his house in his original 1972 Federal income tax return. Respondent in his brief concedes that petitioner had a loss of $180 on the foreclosure. In the year 1972, the ratio of land assessment to the overall assessment of the property for purposes of real property taxes was 12.195 percent. Using this figure to compute the value of the depreciable structure and using a 20-year useful life for the building, respondent computed petitioner's adjusted basis at the time of foreclosure in the following manner: Total cost of house and land
$16,300
Value of non-depreciable land at 12.195%
2,000
Cost of depreciable property
$14,300
Annual depreciation allowable [2]
for 20-year useful life
715
Depreciation allowable between purchase
on 7/14/64 and foreclosure on 4/25/72
5,720
Adjusted basis at time of foreclosure
$10,580
*35 Respondent computed the loss he concedes that petitioner sustained on the foreclosure in the following manner: Amount realized on foreclosure
$10,400
Less: Adjusted basis
10,580
Loss
($ 180)
Issue 3. Bad Debt Deduction
In 1963, while he was in Vietnam, petitioner loaned one William Tsui $2,500. Mr. Tsui was a British citizen from Hong Kong. The purpose of the loan was to aid Mr. Tsui in a business venture. Mr. Tsui issued petitioner an "Order to Pay" directing the Irving Trust Company to pay petitioner $2,500. During 1965 petitioner delivered this "Order to Pay" to the National State Bank in Elizabeth, New Jersey, for collection. The order was either lost or destroyed in transit, and petitioner brought suit on the note in the Superior Court of New Jersey. On March 18, 1968, a judgment was rendered by that court, affirming the existence of the note, but absolving the bank from liability for payment. The Irving Trust Company did not honor the "Order to Pay" because Mr. Tsui had insufficient funds on deposit with the bank to cover the "Order to Pay." Thereafter, from 1969 to 1975, petitioner's attorney wrote several letters to various addresses at *36 which he thought Mr. Tsui might be located in an effort to collect on the "Order to Pay." In 1972, as he had done the two previous years, petitioner tried to locate Mr. Tsui at a company Mr. Tsui owned in Saigon, but to no avail. Petitioner claimed no deduction with respect to the $2,500 owed him by Mr. Tsui in his original 1972 Federal income tax return or in his petition. However, in an amended petition filed after the trial, petitioner claimed a deduction for this $2,500 as a business bad debt under section 166. Respondent contends that this claimed deduction is not allowable since petitioner has failed to show that the debt became worthless, or that if it did become worthless that it became worthless in 1972 or, that if the debt did become worthless in 1972, it was a business bad debt. OPINION Issue 1. Business Loss
The $5,120 loss from the operation of SUCO claimed by petitioner on his 1972 return represents the sum of the $3,500 amount by which petitioner contends the cost of goods sold exceeded the gross receipts from the sale of the goods, $420 spent for four round-trips from Vietnam to Thailand, and $1,200 paid for rent of the SUCO premises in Thailand. *37 Respondent recognized that certain expenses must have been incurred in generating the gross receipts from operation of the SUCO business. However, he contends that this record fails to show that business deductions and cost of goods exceed the $6,000 of reported gross receipts from the SUCO business. Therefore, respondent disallowed the claimed $5,120 loss. Petitioner failed to substantiate his claimed loss. With respect to the cost of goods sold, he has presented no evidence whatever to support his testimony that the goods sold cost $9,500. Even petitioner's testimony is vague as to how he arrived at the $9,500 cost. With respect to the $420 allegedly spent on air fares from Vietnam to Thailand, petitioner's substantiation consists of a letter from an official of a now defunct travel agency in Vietnam. While this letter does tend to establish that petitioner did spend $420 on airplane tickets between Vietnam and Thailand in 1972, petitioner offered no proof tending to show that these trips were business related. With respect to the deduction of $1,200 claimed to be the amount expended for rent for the SUCO premises in Thailand, petitioner's substantiation consists of two *38 letters from a former business associate at SUCO. One letter states that petitioner paid the rent for the SUCO premises, and the other letter indicates that the monthly rental was $100. These letters indicate that the premises rented were a residence and there is no showing of the extent of business use made of the premises. Petitioner has offered no business records, checks, or receipts with respect to SUCO's operations. Assuming that petitioner actually received $6,000 from SUCO in 1972, there is nothing in this record to show that cost of goods sold plus proper expenses of the business exceed this sum. Respondent's deficiency determination is presumptively correct, and petitioner bears the burden of proof in rebutting this presumption. On the basis of the record before us, we find that petitioner has failed to establish that he is entitled to a deduction for a loss from the operation of SUCO. Because petitioner has failed to show cost of goods sold plus expenses of SUCO exceeded the gross receipts of SUCO, we sustain the disallowance of petitioner's claimed loss from the SUCO business *39 operations in 1972. Issue 2. Loss in Operation of and From Disposition of Rental Property
The documentation in support of the losses incurred by petitioner from the operation of and disposition of his rental property is sparse. The only relevant documentation is a letter from the Veterans' Administration setting forth the amount of the debt owed the V.A. by petitioner after foreclosure. At the sheriff's sale the property was purchased by First Jersey Savings and Loan Association for $15,818.59. First Jersey subsequently conveyed the property to the V.A. for the same consideration. The V.A. gave petitioner a credit of $10,400, the appraised fair market value of the house at the time of foreclosure. Petitioner became indebted to the V.A. for $5,128.77, which represents the balance of the mortgage debt less a credit for certain disbursements made after the sale. Petitioner claims the entire amount of his principal indebtedness to the V.A. as a loss incurred in 1972. Petitioner misconceives the nature of a loss from a foreclosure sale. Obviously petitioner would not sustain a loss from a foreclosure sale in excess of the loss he would have sustained from a sale of the property *40 at the appraised price in a negotiated sale of the property. Therefore, the amount of loss is the excess of petitioner's basis in the property over the appraised price of the property for the purpose of the foreclosure sale. Petitioner claimed closing costs of $1,200 as part of the loss incurred upon foreclosure of the house. He has provided no substantiation for this expenditure. Closing costs are ordinarily includable in a taxpayer's basis in property. See Warner Mountains Lumber Co. v. Commissioner,9 T.C. 1171 (1947). However, this record does not contain any substantiation of the amount, if any, of closing costs paid by petitioner. The parties stipulated that "the cost of this house was $16,300.00." Insofar as this record shows, "the cost" of $16,300 may have included any closing costs paid by petitioner. In his computation of the amount lost upon foreclosure, petitioner included the sum of $876 which he contended he spent to travel from Vietnam to the United States when he learned that foreclosure was imminent. He has failed to show either the cost of his trip *41 or that it was proximately related to the foreclosure of the property. Petitioner also included in the amount claimed to represent his loss a $65 attorney's fee. There is no showing in this record that this fee was paid for legal advice and assistance in petitioner's efforts to retain his real estate. Also, the record contains no substantiation for this expense. Consequently, we have no basis to conclude that this expense could properly be either allowed as a deduction under some section other than section 165 or included in petitioner's basis in the property. Petitioner further alleges that $1,200 was spent on labor and materials for the apartments. No records were submitted to confirm these expenditures, and no evidence was presented detailing the nature of the improvements. It may be that some of the expenditures were for improvements that were capital in nature, the cost of which would be properly includable in petitioner's basis. However, this record offers no basis for such a determination. Consequently, we conclude that no part of the $1,200 allegedly spent for repairs enters into the loss calculation. Lastly, in arriving at his loss figure, petitioner included *42 $3,000 representing rents collected by petitioner's brother but never turned over to petitioner. At trial petitioner conceded that because he had never included the $3,000 in income, he was not entitled to a loss in that amount. With minor adjustment, we accept respondent's determination as to the amount of the loss incurred. Respondent, however, used a 20-year useful life in computing the allowable depreciation. Petitioner's property was subject to a 30-year mortgage, and for this reason this period appears more likely to be the useful life for computing depreciation deductions. In addition, petitioner's wife resided in one of the apartments from the date of purchase until April of 1968. In our view, for the period of time the property was being held in part for personal use rather than for the production of income, the allowable depreciation would be two-thirds of the total amount computed as depreciation on the three-unit property. Subsequent to the trial of this case, petitioner submitted photostats of a rent receipts book allegedly kept by petitioner's brother with regard to the rental property. Most of the receipts reflect rental income for years not here in issue. Assuming *43 that this receipts book establishes that petitioner or his brother received rental income from the property, the fact that income was received would not affect the loss calculation. Petitioner also submitted copies of notices from the local health department concerning his property, a 1969 bill for insuring the property, and a bill for a sewer charge in 1972. We find these exhibits irrelevant to the question of the amount of loss sustained by petitioner in 1972 upon foreclosure. Issue 3. Bad Debt Deduction
With respect to the debt owed petitioner by Mr. Tsui, respondent takes the position that petitioner has failed to show that the debt became worthless, or that it became worthless in 1972, or, even if it became worthless in 1972, that it was a business bad debt. On the basis of the record before us, we find that petitioner has failed to prove that Mr. Tsui's debt to him became worthless in 1972. Whether a debt has become worthless in a particular year is a question of fact to be determined on the basis of all the facts and circumstances. Perry v. Commissioner,22 T.C. 968 (1954). *44 Petitioner has advanced no cogent reason for a finding that Mr. Tsui's debt became worthless in 1972, if ever. Apparently, Mr. Tsui operated a business in Saigon, the assets of which could possibly have been used to satisfy Mr. Tsui's debt. In addition petitioner's own actions with regard to the debt contradict his assertion that the debt became worthless in 1972; he continued to attempt to collect from Mr. Tsui as late as 1975. The only evidence concerning petitioner's attempts to collect his debt from Mr. Tsui in 1972 is petioner's testimony that he unsuccessfully attempted to contact Mr. Tsui at his office in Saigon in that year. Petitioner had made similar efforts in previous years and continued these efforts subsequent to the year at issue. Consequently, petitioner has failed to demonstrate that Mr. Tsui's debt became worthless, if at all, in 1972 rather than in some prior or subsequent year. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect in the year in issue.↩
2. For purposes of computing gain or loss, sec. 1016(a)(2) provides that basis shall be adjusted to reflect depreciation allowed or allowable.↩