**CROWELL LAND AND MINERAL CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 16016.

United States Court of Appeals
Fifth Circuit.

April 12, 1957.

Richard L. Crowell, Alexandria, La., for petitioner.

David O. Walter, I. Henry Kutz, Lee A. Jackson, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., John Potts Barnes, Chief Counsel, Claude R. Marshall, Sp. Atty., Internal Revenue Service, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

Crowell Land and Mineral Corporation petitions for a review of a decision of the Tax Court,[1] three judges dissenting, sustaining the Commissioner in assessing against it for the year 1949 an income tax deficiency in the amount of $1,839.12. The majority concluded that Crowell's income in that year of $14,147.04, derived from sand and gravel removed from its lands pursuant to a written contract of sale by it as "vendor" with full warranty of title to Gifford-Hill and Company, Inc., as "vendee", was taxable as ordinary income rather than as gain derived from the sale of a capital asset, as Crowell had reported it.

Our only question here is whether the transaction under consideration was a sale of sand and gravel, as taxpayer claimed and the dissenting judges found, or, as the commissioner contended and the majority found, a lease of the right to remove with a reserved royalty payment.

Largely stipulated, the facts are undisputed. Crowell, in 1949, was the owner of more than one hundred thousand acres of land in Louisiana which it had acquired in December, 1941. Sometime prior to January 8, 1947, 23.21 acres

1. 25 T.C. 223.

were found to contain a substantial deposit of sand and gravel. Tests were made, but it was impossible to determine the exact quantity contained in the deposit. January 8, 1947, Crowell executed an instrument styled "Contract of Sale" with Gifford-Hill for the removal of the sand and gravel. The deposit in controversy was not carried or listed in the inventory of Crowell nor held primarily for sale to customers in the ordinary course of its business, and this was the only instance in the history of the corporation in which it made a contract of any nature concerning sand and gravel underlying any of its lands. Throughout the contract Crowell is denominated "vendor" and Gifford-Hill "vendee".

The contract of sale provided that *Crowell, as vendor,* for the expressed consideration and on the terms enumerated, *sold and conveyed* unto *Gifford-Hill, vendee, with full warranty of title, all sand and gravel underlying certain described property.* Consideration was fifteen cents per cubic yard for all sand and gravel removed, payable $1200 upon execution of the instrument and $1200 at the beginning of each year the contract was in effect as advance payment, with Gifford-Hill having the privilege of removing without payment an amount of sand and gravel at fifteen cents per cubic yard equivalent to the advance cumulative payment. All material removed over and above the amount of the cumulative advance payment was to be paid for on or before the 20th of each month at the rate of fifteen cents per cubic yard. Failure of Gifford-Hill to make any of the payments provided for cancelled the contract and obligated it to execute a reconveyance.

Gifford-Hill was to have five years within which to go upon the lands and remove the sand and gravel purchased. If all sand and gravel was not removed within five years, "then all rights herein provided shall terminate and all such materials not mined and removed revert immediately and ipso facto *to the Vendor, and Vendee binds and obligates itself to immediately execute a reconveyance of all of such materials unto the Vendor* \* \* \*." (Emphasis supplied.)

Gifford-Hill was to pay the severance and other taxes then assessable or which might be imposed during the life of the contract. Crowell was to pay the ad valorem taxes on the land. Gifford-Hill agreed in the instrument not to transfer or encumber any of the materials therein purchased without written consent of Crowell. Failure to do so terminated the contract, with all materials immediately and *ipso facto* reverting to Crowell, with Gifford-Hill being obligated to execute a reconveyance.

During the year 1949 Crowell received $14,147.04 for sand and gravel removed from the premises by Gifford-Hill and reported this as receipts from the sale of a capital asset. As above stated, the commissioner determined that the receipts from the "Contract of Sale" for sand and gravel were ordinary income rather than income from the sale of capital assets, and assessed the $1839.12 deficiency, and the majority of the Tax Court sustained his determination.

On the other hand, the minority, disagreeing both with the conclusion of the majority and the reasoning upon which that conclusion was reached, determined correctly and for good reasons,[2] we

2. "The petitioner sold the material here in question for a fixed price, 15 cents per cubic yard removed. Nothing was to vary that price or the vendee's obligation to pay it. The entire purchase price would be paid in less than five years if the material was all removed sooner. The five years was not a rental period. The petitioner was not entitled to receive or to be credited with any part of the material as removed. It was not to share in any profit or income derived by the vendee from the removal of the material. The amount the petitioner was to receive did not depend in any way upon the vendee's income from the removal of the sand and gravel or upon the unit or other value of the materials removed. The total amount received by the vendee from the sale by it of material removed belonged to it and no part thereof belonged to the petitioner. Cf. Thomas v.

think, that the transaction was not a lease but a sale, and the cases relied on by commissioner and majority to support their view were not in point.

Here the commissioner, contending that the typical treatment of agreements of this kind has been to regard the proceeds as ordinary income, urges upon us that the instrument effects a lease of the surface with the right to remove the sand and gravel over a five year period with periodic royalty payments similar to oil and gas leases. The basis for this contention, and premise upon which the Tax Court relied to find an economic interest in Crowell, was that the payments were to be made as the deposits were removed over a five year period, after which there was to be a retransfer of the property.

Like the minority, we do not find the arguments of the commissioner and the majority or the cases, involving oil and gas and other mineral leases, cited by them persuasive of the commissioner's contention that Crowell did not make a sale but only executed a mineral lease with a reserved royalty. Indeed, we think that an analysis of the contract of sale and of what was to be, and was, done under it completely rebuts the commissioner's theory that the arrangement was merely one of lease, under which Crowell retained an economic interest

within the meaning of the cases the commissioner cites and relies on. The instrument, unlike a mineral lease where the main purpose is development, undertook as its main purpose to convey the entire interest of Crowell for a price to be determined as fixed in it and to be paid in cash in installments. There was no provision or suggestion in it for the retention and payment of a royalty as in oil and gas leases. A bona fide sale was the intent of the parties and it was expressed in terms free from ambiguity throughout the instrument in the provisions and conditions it set out. Looking to the actual circumstances as well as the language of the contract of sale, there is no occasion or basis for resorting to legal niceties of interpretation to defeat the basic purpose and effect of the transaction. Crowell did indeed have the possibility of a reverter within the five year period upon the terms set out in the contract, together with the right to a reconveyance at the end of the five years, but these provisions in no manner detract from the effect of the instrument as a whole as constituting a sale and entitling the sale of a capital asset to capital gains treatment.

The provision for reverter and retransfer at the conclusion of the five year period did not necessarily mean that any sand and gravel would revert

Perkins, 301 U.S. 655, 57 S.Ct. 911, 81 L.Ed. 1324; Anderson v. Helvering, 310 U.S. 404, 60 S.Ct. 952, 84 L.Ed. 1277. The contract of sale here was substantially different from the mineral leases involved in the cases cited by the petitioner and the facts that the method of payment here was based of necessity upon the amount of material removed, a time limit for removal was set and the vendee was permitted to come upon the property to remove the purchased material are insufficient to twist this contract of sale into a lease similar to the mineral leases in the cases cited by the commissioner.

"The petitioner argues that the contract was in all respects a contract of sale rather than a lease, the five years was regarded as ample time by the parties to permit the removal of all of the material and the method of payment was made necessary by their inability to de-

termine in advance just how much material was there. The commissioner does not advance any sound reason for regarding this instrument as a lease instead of a contract of sale, and he cites no authority which really supports his argument. The stipulation shows that the gravel deposit was a capital asset of the petitioner which it had held for more than six months prior to sale, and the gain should be treated for income tax purposes as a long-term capital gain. This is a stronger case for capital gain treatment than cases involving sales of standing timber where payment was from profits. See John W. Blodgett, 13 B.T.A. 1388; J. J. Carroll, 27 B.T.A. 65, affirmed 5 Cir., 70 F.2d 806; Estate of M. M. Start, 45 B.T.A. 882; Camp Manufacturing Co., 3 T.C. 467; Isaac S. Peebles, Jr., 5 T.C. 14; Warner Mountains Lumber Co., 9 T.C. 1171; United States v. Robinson, 5 Cir., 129 F.2d 297."

or be retransferred. In fact, it was all removed and the area covered with water, rendering it useless. Reverter ipso facto, to be followed by reconveyance by the vendee if certain provisions were not complied with, was in the nature not of the retention of an economic interest by way of royalty but of a vendor's lien to protect the payment due Crowell.

Neither the method of payment, based upon the amount of the deposit removed at specified intervals during the five year period the vendor had in which to effect removal, nor the provisions for reverter and retransfer can be regarded as indicia of or analogous to a mineral lease so as to permit the payments made by the vendee under the sale contract to be regarded and treated as payments of royalty rather than, as they were intended to be and were, installment payments on the price.

The judgment of the Tax Court is reversed for further proceedings in accordance herewith.