William Louis ALBRITTON et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16307.

United States Court of Appeals Fifth Circuit.

July 26, 1957.

Rehearing Denied Aug. 24, 1957.

B. B. Taylor, Jr., Baton Rouge, La., for petitioner.

Sheldon I. Fink, Lee A. Jackson, Ellis N. Slack, David O. Walter, Attys., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, John Potts Barnes, Chief Counsel, John M. Morawski, Sp. Atty., I.R.S., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal calls for the decision of an issue which is thus stated in the stipulation of facts upon which the case was tried before the Tax Court: "The sole and only issue in all of these cases to be decided by the Court is whether or not receipts from the extraction of gravel from the lands belonging to the taxpayers constituted ordinary income or income subject to the provisions of the capital gains sections of the Internal Revenue Code."[1] Several leases and several taxpayers operating as partners are involved, but the legal questions presented are identical, and the Tax Court, using one of the contracts as typical of all, decided all of them against the taxpayers and in favor of the Commissioner.[2]

Decision of the case will turn on the construction of the gravel contracts, it being our duty to determine their "dominant purpose" and the "essential character" of the activities defined by them and performed under them.[3] While the descriptive terminology of the contracts is not controlling,[4] we cannot ignore or go beyond the language adopted by the parties as the memorial of their agreements. Nor can we hearken to "the technical niceties and recondite distinctions of local law," Lambert v. Jefferson Lake Sulphur Co., supra [236 F.2d 547]. We look therefore to the language of the contracts, which is clear and unambiguous, to ascertain the intent of the parties who executed them.

The Tax Court in its opinion quoted at length from the contract of August 29, 1947 between taxpayers and one Carruth, and we accept and copy in the margin extracts from it as typical of all of the contracts before us.[5] From the

---

1. If our decision should be against the taxpayers we will be faced with the further question whether the Tax Court should not have permitted them to reopen the case so as to prove depletion.

2. The petitioners are members of the Albritton family including two lawyers and a physician. The Tax Court determined income tax deficiencies against them for the calendar years 1948 and 1949 in the total sum of $5,053.97. In their income tax returns for these years taxpayers had returned their income from sand and gravel contracts as capital gain instead of ordinary income. The Commissioner determined in each instance that the income was ordinary income, and the petitions are for redetermination of the deficiencies resulting from the Commissioner's action.

The Tax Court upheld the position of the Commissioner and determined that the proceeds of the contracts were ordinary income, holding that the contracts: "* * * result[s] in ordinary income to the owner of the property and grant[s] a corresponding economic interest in the minerals in place which can be used as the ground of a claim for depletion * * *" See Albritton v. Commissioner, 24 T.C. 903.

3. Lambert v. Jefferson Lake Sulphur Co., 5 Cir., 1956, 236 F.2d 542, 545.

4. Burton-Sutton Oil Co. v. Commissioner, 1946, 328 U.S. 25, 32, 66 S.Ct. 861, 90 L. Ed. 1062, and West v. Commissioner, 5 Cir., 1945, 150 F.2d 723, 726.

5. "Alvin R. Albritton [and the other taxpayers] referred to as 'lessors', have, for and upon the terms and conditions hereinafter expressed, and they do by these presents lease and let for the purposes hereinafter mentioned * * * unto J. W. Carruth * * * hereinafter designated as 'lessee' the following described property to-wit: * * *

"The lessee shall have the right to mine, extract, remove, and take from said premises all of the merchantable and marketable sand and gravel * * * and * * * to use necessary space for the construction of hoppers, bins and stock pile on said premises, all without any payment in addition to the royalties and other payments herein specifically provided for * * *

"* * * The lessors are to furnish free from royalty to lessee any and all gravel and sand located on the said premises that lessee might desire to use in the construction and maintenance of roads and roadways * * *

"This lease shall be for a primary term of six months from the date hereof, and shall continue in force and effect so long as operations are continued or the

quoted language it is apparent that it would be difficult to draft an instrument more completely embodying the language of a typical lease. The parties named themselves "lessor" and "lessee;" they called the income "royalty," using the word several times in the instrument; they provided for forfeiture if operations were suspended, and stated categorically that it was the intention of the parties that operations be commenced at the earliest practical time and carried on thereafter without undue interruption; and they stipulated that the lessors should derive income of a certain percentage of retail value of the sand and gravel removed during operations under the lease.

It is clear, then, that the lessors retained an economic interest in the sand and gravel, conveyed to lessee only a royalty interest, derived income solely from exploitation, and called the cash payment "advanced royalty." It is manifest, therefore, under a long list of decisions[6] that the amounts received by taxpayers from the extraction of sand and gravel from their lands were taxable as ordinary income.

Taxpayers earnestly insist that this case is ruled by our recent decision in Crowell Land & Mineral Corp. v. Commissioner, 1957, 242 F.2d 864, where we held that a gravel contract constituted a sale entitling the taxpayer to capital gains treatment. A reading of that case[7] will demonstrate that its facts differ widely from those we are dealing with here and that the case is not authority at all for taxpayer's position in the case before us. We held there that, construing the instrument as a whole and considering it against the total background of transactions under it, the contract was

---

minimum monthly payments of Two Hundred * * * Dollars are made; provided that operations cannot be suspended for more than six consecutive months without causing a forfeiture of this lease at the option of lessors.

"This lease is made and accepted for and in consideration of the sum of Ten and No/100 ($10.00) Dollars, * * * and for a further consideration lessee shall pay lessors for all sand and gravel mined and shipped from the said premises herein leased at the rate of five percent (5%) of the retail sales value of each cubic yard of gravel and four percent (4%) of the retail price for each cubic yard of sand so mined and shipped. * * *

"It is further understood and agreed that the amount to be paid lessor by the lessee in any one month after operations are commenced shall be not less than Two Hundred and No/100 ($200 00) Dollars, whether as payment for gravel or sand removed during the said month or as an advance payment of royalty, regardless of the quantity of the sand and gravel removed during the said month. All advance payments so made will be a credit against royalty later owed by lessee to lessors.

"If operations for mining * * * gravel and sand are not commenced on said premises herein leased on or before six months from the date hereof, this lease shall then terminate, for it is the intention of the parties hereto that operations shall be commenced at the earliest practical time and carried on thereafter without undue interruption. * *

"Lessee shall have over the aforesaid property only those rights intimately concerned and related to the mining and removing of sand and gravel * * *'"

6. E. g. United States v. Biwabic Mining Co., 1918, 247 U.S. 116, 38 S.Ct. 462, 62 L.Ed. 1017; Burnet v. Harmel, 1932, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199; Palmer v. Bender, 1932, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489; Anderson v. Helvering, 1940, 310 U.S. 404, 60 S. Ct. 952, 84 L.Ed. 1277; Burton-Sutton Oil Co. v. Commissioner, supra; Commissioner of Internal Revenue v. Southwest Expl. Co., 1956, 350 U.S. 308, 76 S.Ct. 395, 100 L.Ed. 347; West v. Commissioner, supra; Lambert v. Jefferson Lake Sulphur Co., supra; and cf. Commissioner of Internal Revenue v. Mammoth Coal Co., 3 Cir., 1955, 229 F. 2d 535; Kittle v. Commissioner, 9 Cir., 1956, 229 F.2d 313.

7. There the contract was headed "Contract of Sale" and the parties were referred to throughout as "vendor" and "vendee;" vendor was not to receive a percentage of the sale price, but a stipulated price per ton so that the amount received by him did not depend upon the vendee's income from the removal of gravel; production was neither required nor declared to be the central purpose of the contract; and at the end of the five year term vendee was under contract to reconvey the property to vendor.

one of sale. Applying the same tests, we hold that the contracts here are leases of the right to remove sand and gravel, yielding to the landowners nothing but royalty; and that the Tax Court correctly held the income from them liable for tax as ordinary income.

The quotation first appearing (supra fn 2) from the opinion of the Tax Court states that the taxpayer was entitled to use the economic interest retained in the minerals in place "as the ground of a claim for depletion;" and the Commissioner concedes that depletion allowance was proper if properly claimed. The taxpayers filed a motion to reopen the case so that the question of depletion could be developed and passed upon by the Court, but the Tax Court denied the motion without comment. It was based on assertions concerning lack of notice arising from change of attorneys by taxpayers. We think the application of its rules by the Tax Court was too technical and that it ought to have heard the question of depletion and to have determined the character and amount of depletion to which the taxpayers are entitled. For the purpose of such ascertainment and adjudication the judgment of the Tax Court is reversed and remanded; otherwise it is affirmed.