SAMUEL L. GREEN AND ELLA GREEN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 78812. Filed March 28, 1961.

*Samuel L. Green*, pro se.
*David E. Crabtree, Esq.*, for the respondent.

**OPINION.**

RAUM, *Judge:* The question before us has become a familiar one. Whether the profit realized by a landowner with respect to the removal and sale of dirt, sand, gravel, or any mineral deposit on or in his property may properly be classified as capital gain or ordinary income has been dealt with in a number of cases reaching a variety of results. E.g., *Otis A. Kittle*, 21 T.C. 79, affirmed 229 F. 2d 313 (C.A. 9); *Battjes* v. *United States*, 172 F. 2d 1 (C.A. 6); *Albritton* v. *Commissioner*, 248 F. 2d 49 (C.A. 5), affirming in part 24 T.C. 903; *Crowell Land & Mineral Corp.* v. *Commissioner*, 242 F. 2d 864 (C.A. 5), reversing 25 T.C. 223; *Barker* v. *Commissioner*, 250 F. 2d 195 (C.A. 2), reversing 24 T.C. 1160; *Gowans* v. *Commissioner*, 246 F. 2d 448 (C.A. 9), reversing a Memorandum Opinion of this Court; *Maude W. Olinger*, 27 T.C. 93; *Robert M. Dann*, 30 T.C. 499; *Charles A. Linehan*, 35 T.C. 533; *Griffith* v. *United States*, 180 F. Supp. 454 (D. Wyo.); *Sanders* v. *United States*, —— F. Supp. —— (E.D.S.C., Aug. 8, 1960); *Pacific Rock & Gravel Co.* v. *United States*, (S.D. Cal., Apr. 16, 1959) 3 A.F.T.R. 2d 1464, 59–1 U.S.T.C. par. 9448; *Bel* v. *United States*, 160 F. Supp. 360 (W.D. La.). Although the decisions in some of these cases may appear to be in conflict with one another, we think that, when carefully read, they actually apply the

same rule, and it is merely the difference in views with respect to comparatively similar factual situations in the application of that rule that is responsible for the difficulty in attempting to reconcile the cases.

The rule seems to be that where there is in fact a sale of the material "in place," the owner has sold part of his real estate and any profit realized thereby is therefore not disqualified from being regarded as capital gain by reason of the form of the transaction. See, e.g., *Robert M. Dann, supra* at 504, 505 ("in place") ; *Barker* v. *Commissioner, supra* at 196, 197 ("in place") ; cf. *Crowell Land & Mineral Corp.* v. *Commissioner, supra* at 866;[1] *Gowans* v. *Commissioner, supra* at 450, 451, 452.[2] On the other hand, where the owner does not part with his entire interest in the deposits until removed or where he does not sell part of his property "in place," but in effect merely enters into a lease for the exploitation of his land reserving a royalty with respect to the materials extracted or otherwise merely makes arrangements with a contractor to sell the materials at a unit price from time to time as they are extracted and removed from the property, the transaction has not been considered as a sale of a portion of the land entitling the owner to the benefit of the capital gains provisions. See e.g., *Charles A. Linehan, supra* at 544, 545, 546, ("in place") ; cf. *Albritton* v. *Commissioner, supra* at 51.

As we view the problem before us, it is to determine *on this record* whether there has been a sale of the dirt "in place." In other words, did petitioners in fact make "a complete and immediate conveyance of all of * * * [their] interest in the property involved, i.e., [soil deposits] * * * for a substantial cash payment not dependent upon or related to the successful exploitation of the property by the grantee"? *Maude W. Olinger, supra* at 98.

The master contracts with Brewster and Gaskill merely established the terms and conditions upon which petitioners undertook to sell dirt as the contractors removed it from petitioners' land. The contracts themselves did not effect any such sale. Until the dirt was removed

---

[1] The Court in the *Crowell* case stressed the fact that the instrument there considered undertook to "convey the *entire interest* of Crowell for a price to be determined as fixed in it and to be paid in cash in installments." (Italic added.) 242 F. 2d at 866.

[2] In the *Gowans* case the court said (at 450–451) :

"In a series of decisions beginning with Palmer v. Bender, 287 U.S. 551, * * * the principle has been developed that an arrangement involving the extraction and removal of natural deposits from the land of another is to be deemed a "sale" only if, at the time such arrangement is entered into, the owner has alienated all interest therein. Stated conversely, if an economic interest in the deposits has been retained, the transaction is not to be regarded as a "sale" for tax purposes. In that event, the proceeds of the transaction are to be reported as regular income, subject, under certain conditions, to the deduction of a percentage depreciation allowance.

\* \* \* \* \* \* \*

"An economic interest has been retained where the owner has : (1) acquired, by investment, any interest in the natural deposit in place ; and (2) secured by any legal relationship income derived from the extraction of the natural deposit to which he must look for a return of his capital. Commissioner of Internal Revenue v. Southwest Exploration Co.. 350 U.S. 308 * * *'"

from the property it belonged to petitioners, and the payments received by petitioners were based upon the amount of soil extracted from the land. A moment's reflection will disclose the unsoundness of the position that the contracts themselves constituted a sale of the soil in place. Had either of the contractors gone into bankruptcy prior to removal of all the soil permitted under the contracts, could there be any doubt that the remaining soil would not have been an asset of the bankrupt? Plainly, the contracts in this case did not result in petitioners' parting with all interest in the soil prior to removal. They continued to own that soil until it was bought by the contractors, truckload by truckload, in accordance with the master contracts. The situation before us is similar to the one recently considered in *Charles A. Linehan*, 35 T.C. 533.

If petitioners themselves had extracted soil from their land and sold it from time to time, there could be no serious dispute that the profit realized would be ordinary income rather than capital gain. The nature of that income is not altered by the fact that they permitted the vendee-contractors to go on their land and do the extracting. The true test is whether the contract itself resulted in a conveyance of the deposits "in place" so that the owner no longer retained any interest in such deposits.[3]

Petitioners place much reliance upon *Gowans* v. *Commissioner*, 246 F. 2d 448, *supra*, arguing that their predominant purpose in entering into the contracts was to grade the portions of the land involved for ultimate use as industrial land, and not for the exploitation of the soil deposits. It is difficult to see why one purpose rather than another should be of any consequence in relation to the issue before us, since the question is whether petitioner in fact sold the soil deposits "in place", and the answer to that question should not turn upon the motive that prompted them to enter into the transactions under review. Nevertheless, even if such motive were to be regarded as relevant, petitioners have not made out a case under the *Gowans* decision. In the first place, the opinion in Gowans explicitly rested its conclusion upon three factors "in combination" (246 F. 2d at 451), only one of which was comparable to the circumstances stressed by petitioners.

[3] In *Griffith* v. *United States*, 180 F. Supp. 454 (D. Wyo.), the court said (at 458) :

" In a long line of decisions beginning with Palmer v. Bender, 287 U.S. 551 * * *, the underlying principles governing the income tax consequences involving natural deposits have been set forth by the Supreme Court; Anderson v. Helvering, 310 U.S. 404 * * *; Burton-Sutton Oil Co., Inc. v. Commissioner, 328 U.S. 25 * * *; Commissioner of Internal Revenue v. Southwest Exploration Co., 350 U.S. 308 * * *. Under these decisions notwithstanding the terminology of the contract the transaction is to be considered a sale if the consideration is payable to the grantor without respect to the production and sale of the mineral. On the other hand, regardless of the wording of the contract, where the consideration payable to the grantor depends *solely* upon the extraction and sale of mineral, the owner is said to retain an economic interest and therefore his proceeds from the transaction are to be reported as regular income, subject under certain conditions to a deduction of a percentage depreciation allowance."

■■■■■■■■■■■■  ■■■■

The other two are completely absent here.[4]   And in the second place, there is no convincing evidence that even the one factor was present here, for the record fails to show that in entering into the arrangements in controversy petitioners' predominant purpose at that time was other than to exploit the soil deposits.

We hold that petitioners did not make a sale of the soil deposits in place, that the soil was in fact sold pursuant to master contracts from time to time as extracted, and that the profit realized must therefore be treated as ordinary income.

*Decision will be entered for the respondent.*

---

[4] They are: (1) The fact that the contractor obligated itself to remove all the sand; and (2) the fact that the contractor was obligated to pay for all the sand contained in the deposit.   See 246 F. 2d at 451–452.