**Erwin A. SCHREIBER and Clara Schreiber, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 64–C–96.

United States District Court
E. D. Wisconsin.
Dec. 21, 1966.

Robert E. Meldman and Louis L. Meldman, Milwaukee, Wis., for plaintiffs.

James B. Brennan, U. S. Atty., by Franklyn M. Gimbel, Asst. U. S. Atty., Milwaukee, Wis., Mitchell Rogovin, Asst.

Atty. Gen., David A. Wilson, Jr., Daniel J. Dinan, Attys., Department of Justice, Washington, D. C., for defendant.

## OPINION AND ORDER

GRUBB, Senior District Judge.

This is an action for the recovery of alleged overpayments of income taxes in the amount of $17,829.76 for the years 1959 through 1963. The case was tried to the court and has been submitted on post-trial briefs.

The sole question presented for decision is whether payments for sand and gravel excavated and removed from taxpayers' premises were taxable as ordinary income or as capital gains.

Taxpayers, Mr. and Mrs. Erwin A. Schreiber, acquired title to the premises where the gravel and sand deposits are located by gift in the year 1952. They have continuously conducted farming operations on this 87-acre parcel from 1941 to the present date. The operations included cash crop farming, dairy farming, and since 1963, raising hay, grain, and corn for resale on the available land.

On July 11, 1957, taxpayers entered into an agreement with the Merget Sand & Gravel Company concerning the excavation and removal of sand, stone, and gravel deposits on the farm. The contract was entitled "Agreement For Purchase and Removal of Stone, Sand and Gravel." Taxpayers, designated as "owners" therein, granted Walter E. Merget, d/b/a Merget Sand and Gravel Company, the exclusive right to excavate the materials in question for a term of five years with the right of the Merget Company to extend the term for an additional three years thereafter.

Payment for material actually removed from the premises was the sum of twenty cents per cubic yard, to be made monthly. The Merget Company had the right to stockpile excavated materials on the premises as to which the owners retained a lien of twenty cents per cubic yard. The maximum amount to be removed in any one year was set at 150,000 cubic yards and a minimum payment

per year during the term of the contract of $2,000 was guaranteed. Any sale of the premises during the term of the agreement would be subject to the rights of the Merget Company. In case of default or of bankruptcy of the Merget Company, the owners had the right to terminate on ten days' notice.

In the written document of July 11, 1957, the parties used the term "lease" in four material provisions: with reference to the right of the owners to use of the remaining land for agricultural purposes; with respect to the term of the "lease" and to the right of the owners to terminate on bankruptcy or default.

A second agreement was executed between the parties in May 1963, identical in all respects to the earlier contract except for the substitution of the term "agreement" where the earlier instrument had employed the word "lease." Both the 1957 and the 1963 contracts were prepared by counsel for the taxpayers.

The extent of the sand, stone, and gravel deposit on the Schreiber property was not known at the time the 1957 and 1963 agreements were executed and had not been ascertained as of the time of trial in this case. As of the year 1963, the area available for agricultural purposes had been reduced to approximately 60%. An aerial photograph taken in the spring of 1966 indicates that the excavating operations have further consumed the available land.

The Merget Company purchased a three-acre parcel direct from the Schreibers on which they housed machinery, built a work shop, garage, office space, and scale. Mr. Schreiber recalled that at the time of execution of the original contract Mr. Merget proposed to purchase all the sand and gravel on the farm, and further, that it was his present intention to allow the Merget Company to continue mining operations until the supply is exhausted. For the years 1959 through 1961 the Schreibers reported the amounts received from the sale of excavated and removed material as ordinary income and applied a 5% depletion allowance against

them. They changed to reporting said income as capital gains for the years 1962 and 1963. The Merget Company reported the payments as "royalties" for all years in question.

■ Property held by a taxpayer constitutes a capital asset for purposes of the Internal Revenue Act but does not include stock in trade or property held primarily for sale to customers in the ordinary course of the taxpayer's trade or business. Section 1221, Title 26 U.S. C.A., I.R.C.1954. In the case of income derived from the sale of mineral deposits such as sand or gravel the courts have looked to the entire transaction to ascertain the nature of the income for federal tax purposes. If the substance of the transaction constituted a sale of the deposit in place, the payments qualified for capital gains treatment. For example, there was a sale of the deposit in place where the contract was one of sale in Crowell Land and Mineral Corporation v. Commissioner of Internal Revenue, 242 F.2d 864 (5th Cir. 1957); where the agreement required the contractor to remove all of the deposit in Gowans v. Commissioner of Internal Revenue, 246 F.2d 448 (9th Cir. 1957), and Peeler v. United States, 238 F.Supp. 640 (M.D.Ga.1964); or where the agreement was tantamount to creating such an obligation as in Barker v. Commissioner of Internal Revenue, 250 F.2d 195 (2nd Cir. 1957).

On the other hand, where the taxpayer retained an economic interest in the portion of the deposit remaining after excavation and removal of the material giving rise to the income in question, the payments are considered ordinary income and qualify for allowance of a deduction for depletion. Retention of an economic interest is found where the owners do not sell the entire deposit or any specified portion thereof but merely grant a contractual right to extraction and removal of unspecified amounts of material as in Laudenslager v. Commissioner of Internal Revenue, 305 F.2d 686 (3rd Cir. 1962); where the owner of the deposit grants a lease and retains an interest

in the percentage of the retail value of the excavated material as in Albritton v. Commissioner of Internal Revenue, 248 F.2d 49 (5th Cir. 1957); or where the contract was one of lease, granting the right to excavate and remove unspecified amounts and the court found no indicia of a sale of the deposit in place in the totality of the transaction as in Freund v. United States, 367 F.2d 776 (7th Cir. decided October 12, 1966).

In the instant case the Schreibers entered into a lease and granted the right to excavate and remove sand, stone, and gravel in an unspecified amount for a term of five years with a three-year renewal provision. Elimination of the term "lease" from the 1963 agreement does not change the essential grant of the right to excavate and purchase to one of sale or conveyance of the deposit in place. Although Mr. Schreiber may have understood that the Merget Company proposed to exhaust the deposit and it may be his present intention that said company continue mining until exhaustion, under the written agreements between the parties, which were prepared by the attorney for the Schreibers, the Merget Company has no obligation to remove all sand, stone, and gravel or any specified amount thereof from the premises during the life of the agreement. The Merget Company was not required to excavate and purchase any amount of material. It could, if it chose to offset the minimum guarantee by production, limit itself to excavation and removal of 10,000 cubic yards; or it could purchase up to 150,000 cubic yards in any year, and more, if it got the consent of the Schreibers. The deposit was not exhausted during the term of the original contract, and there is no indication whether or not the operations under the 1963 agreement will result in removal of the entire deposit.

The requirement of a guaranteed annual minimum payment which could be met by production does not serve to convert the grant of the right to excavate and purchase into an absolute sale of the whole or of any specified part of the deposit. Freund v. United States, supra at 778. Although Mr. Schreiber had been engaged and remained occupied to a limited degree in farming, unlike the taxpayer in *Freund* who had been in the sand and gravel business prior to granting a lease for the operations to another, this fact does not establish that the Schreibers intended to divest themselves of their economic interest in the unascertained portions of said deposit left unexcavated by the Merget Company on expiration of their contract. The consequence to the land of excavations of mineral deposits would be the same regardless whether this is by sale or under lease and furnishes no clear evidence of the intention of the parties to the transaction.

To qualify for capital gains treatment in transactions concerning the removal and sale of mineral deposits taxpayers must make a showing that they retained no economic interest in the deposits in place. This has not been made in this case. Taxpayers have failed to meet the burden of establishing that the transaction giving rise to the income in question did not constitute a normal source of business income. See, Corn Products Refining Co. v. Commissioner of Internal Revenue, 350 U.S. 46, 52, 76 S.Ct. 20, 100 L.Ed. 29 (1955).

The foregoing opinion sets forth the court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure. The clerk is hereby directed to enter judgment against the plaintiffs, Erwin A. Schreiber and Clara Schreiber, and for the defendant, United States of America, dismissing the action and for defendant's costs.