*Decision will be entered under Rule 50.*

*OLLIE G. ROSE, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5263–68.   Filed April 27, 1971.

*Harry G. Weeks*, for the petitioner.
*John W. Dierker*, for the respondent.

#### OPINION

STERRETT, *Judge:* The respondent determined deficiencies in the Federal income tax of the petitioner for the taxable years 1964, 1965, and 1966 in the amounts of $6,413.63, $7,178.99, and $1,623.46, respectively. Due to concessions of the parties the sole issue remaining for decision is whether certain payments under a document styled "Sand and Gravel Deed" are long-term capital gain or, as the respondent contends, ordinary income subject to a 5-percent allowance for depletion under section 613(b)(6)(A), I.R.C. 1954.[1]

All of the facts were stipulated. The stipulation and the exhibits attached thereto are incorporated herein by this reference.

---

[1] All references by section are to the Internal Revenue Code of 1954 unless otherwise stated.

*Caption changed by Court order dated June 4, 1971, to Estate of Ollie G. Rose, Deceased, Berta Rose Brown, Executrix, Petitioner v. Commissioner of Internal Revenue, Respondent.

Ollie G. Rose (hereinafter referred to as petitioner) resided in Tarrant County, Tex., at the time her petition was filed herein. She filed Federal individual income tax returns for the years 1964, 1965, and 1966 with the district director of internal revenue at Dallas, Tex.

On July 1, 1963, the petitioner joined in the execution of the following document, only irrelevant passages of which have been deleted:

THE STATE OF TEXAS }
} SAND AND GRAVEL DEED
COUNTY OF TARRANT }

MADE this 1st day of July, A.D. 1963, by and between BERTA ROSE BROWN and husband J. O. BROWN, OLLIE G. ROSE, a widow, and MARGARET R. MAY, who has elected under Article 4614, Vernon's Ann. Civ. St., to manage and control her separate property, all of the County of Tarrant, State of Texas, hereinafter referred to as GRANTOR, and RICHARD C. PRATER AND R. W. DIAL, both of the County of Tarrant, State of Texas, hereinafter collectively referred to as GRANTEE,

### WITNESSETH

WHEREAS, GRANTOR is the owner in fee simple of that certain lot, tract or parcel of land hereinafter more particularly described and situated in Tarrant County, Texas, and

WHEREAS, said land contains certain deposits of sand and gravel which GRANTEE desires to purchase and GRANTOR desires to sell and convey same to GRANTEE, and

WHEREAS, it is the intention by these presents to sell and convey said deposits rather than in any manner lease said premises for the extraction of said sand and gravel,

Now, THEREFORE, KNOW ALL MEN BY THESE PRESENTS:

That GRANTOR, in consideration of $10,000.00, and such other consideration as hereinafter mentioned, payable as follows:

(a) $1,250.00 paid simultaneously with the execution of this deed, receipt of which is hereby acknowledged
(b) $1,250.00 on or before July 1, 1964
(c) $1,250.00 on or before July 1, 1965
(d) $1,250.00 on or before July 1, 1966
(e) $1,250.00 on or before July 1, 1967
(f) $1,250.00 on or before July 1, 1968
(g) $1,250.00 on or before July 1, 1969
(h) $1,250.00 on or before July 1, 1970

has granted, sold and conveyed, and does by these presents grant, sell and convey unto GRANTEE all sand and gravel upon and underlying all that property described in Exhibit "A" attached hereto and made a part hereof for all purposes, together with the right of ingress and egress at all times for the purpose of extracting sand and gravel, and removing the same therefrom.

1

GRANTEE is to have the privilege of removing without additional payment during each of the following periods:

        July 1, 1963–June 30, 1964
        July 1, 1964–June 30, 1965
        July 1, 1965–June 30, 1966
        July 1, 1966–June 30, 1967
        July 1, 1967–June 30, 1968
        July 1, 1968–June 30, 1969
        July 1, 1969–June 30, 1970
        July 1, 1970–June 30, 1971

2,500 cubic yards of sand and gravel.

2

As additional consideration for the conveyance herein made, GRANTEE shall pay to GRANTOR a sum equivalent to the total sand and gravel removed from the premises in any one yearly period in excess of 2,500 cubic yards, such sum to be computed in accordance with the amounts set opposite the following classifications:

| Amount per cubic yard | Classifications |
|---|---|
| 1. $0.50 | Good and washable (pit) |
| 2. $0.35 | Road gravel (white) |
| 3. $0.10 | Other nonmetallic earth material |

Following the extraction of 2,500 cubic yards in any one yearly period as set forth in the preceding paragraph, GRANTEE shall pay the additional consideration, if any, to GRANTOR monthly, on or before the 10th day of each succeeding month during such yearly period.

GRANTEE shall keep accurate records as to the amount and classification of sand and gravel removed from the premises, and on or before the 10th day of each month, shall deliver to GRANTOR or GRANTOR [sic] representative, statements showing the classifications and the amounts of sand and gravel removed from the premises during the preceding monthly period. GRANTOR or GRANTOR'S representative shall at all times have access to GRANTEE'S records for the purpose of verifying the amount of sand and gravel removed from the premises under the terms hereof.

3

In the event GRANTEE should fail to make payment when due of any of the consideration called for by this deed, then in such event, GRANTOR may notify GRANTEE in writing of such default and if such default is not cured within fifteen (15) days after such notification, the title to all sand and gravel conveyed to GRANTEE by this deed not theretofore extracted shall automatically revert to GRANTOR without further action on the part of GRANTOR AND GRANTEE agrees, upon request of GRANTOR, to execute such deed or other instrument as may when filed of record reasonably evidence the fact that the title to such sand and gravel has reverted to GRANTOR.

4

At the expiration of eight (8) years from the date hereof, title to all sand and gravel not theretofore extracted from the premises shall automatically revert to

GRANTOR without further action on the part of GRANTOR, and GRANTEE binds and obligates himself upon request of GRANTOR, to immediately execute such deed as when filed of record shall reasonably evidence the fact that title has so reverted to GRANTOR.

To HAVE AND TO HOLD all sand and gravel upon and underlying the above described property, together with all and singular the rights and appurtenances thereto in anywise belonging unto the said GRANTEE, for the term stated and subject to the conditions and covenants aforesaid, GRANTOR does hereby bind himself, his heirs, executors and administrators to Warrant and Forever Defend all and singular said sand and gravel upon and underlying the above described property unto said GRANTEE, his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

GRANTEE joins herein to evidence his acceptance of title under all of the terms and conditions of the foregoing, and agrees to pay the consideration set forth above.

This instrument is executed by the parties hereto, the day and year first above written in four (4) counterparts, any one of which may be deemed an original:

BERTA ROSE BROWN

J. O. BROWN

OLLIE G. ROSE

MARGARET R. MAY, *Grantor*

RICHARD C. PRATER

R. W. DIAL, *Grantee*

The respondent has conceded that only one-third of the total proceeds received under the above contract were includable in the petitioner's income, therefore the amounts in question are as follows:

| Year | One-third of total proceeds from contract |
| --- | --- |
| 1964 | $13, 074. 04 |
| 1965 | 10, 294. 78 |
| 1966 | 4, 102. 50 |

On her Federal income tax returns for 1964,[2] 1965, and 1966, petitioner reported these amounts as long-term capital gain from the sale of real estate.

---

[2] On her 1964 return the petitioner reported the amount of $13,074.03, while the parties have stipulated that $13,074.04 is in issue. This discrepancy was not explained to the Court, but, we feel certain the parties can work it out in a Rule 50 computation.

In his statutory notice the respondent stated that the proceeds received by the petitioner were ordinary income subject to the 5-percent depletion allowance, "because it has not been established that the transaction giving rise to receipt * * * was not a lease nor that you did not retain an economic interest."

This case presents the frequently litigated issue of whether the income realized by a landowner upon the removal and sale of a mineral deposit should be characterized as capital gain or ordinary income. See *Samuel L. Green*, 35 T.C. 1065, 1069 (1961), for some of the decided cases. The question to be answered is whether the petitioner, by contract, has sold the sand and gravel on her property "in place," thereby, selling part of the realty or whether she has retained an "economic interest" in these minerals to which she must look for payment. *Wood* v. *United States*, 377 F. 2d 300, 304 (C.A. 5, 1967), affirming an unreported case (N.D. Tex. 1967, 19 A.F.T.R. 2d 1542, 67–2 U.S.T.C. par. 9522).

As we stated in *Samuel L. Green, supra* at 1070:

where the owner does not part with his entire interest in the deposits until removed or where he does not sell part of his property "in place," but in effect merely enters into a lease for the exploitation of his land reserving a royalty with respect to the materials extracted * * *

any payments received as a result of this exploitation are taxable as ordinary income. *Albritton* v. *Commissioner*, 248 F. 2d 49, 51 (C.A. 5, 1957), affirming in part 24 T.C. 903 (1955).

As the petitioner argues on brief, we are bound by virtue of our decision in *Jack E. Golsen*, 54 T.C. 742 (1970), to decide this case under the law as it exists in the Fifth Circuit, for, an appeal from our determination herein would be to that Court of Appeals. The petitioner urges that *Crowell Land & Mineral Corp.* v. *Commissioner*, 242 F. 2d 864 (C.A. 5, 1957), reversing 25 T.C. 223 (1955), is dispositive. We do not agree. In *Crowell* "strong emphasis was placed upon the wording of the instrument as contract of sale." *Wood* v. *United States, supra* at 310. The Court of Appeals in *Crowell* reasoned that the contract there in question unambiguously revealed the true intent of the parties. "Looking to the actual circumstances as well as the language of the contract" the court determined that the instrument represented a bona fide sale. *Crowell Land & Mineral Corp.* v. *Commissioner, supra* at 866; *Wood* v. *United States, supra* at 311, fn. 24 and accompanying text. In contrast, the instant facts do not indicate that the parties intended a sale.

The contract, in question here, was drafted using terms of sale, however, in this instance it is necessary that we look beyond the language of the instrument. *Rutledge* v. *United States*, 428 F. 2d 347 (C.A. 5,

1970), reversing an unreported case (W.D. La. 1969, 23 A.F.T.R. 2d 1221, 69–1 U.S.T.C. par. 9427). If it is the contention of the petitioner that we must limit our investigation to the phraseology of her agreement she is in error. We are not of the opinion that the Court of Appeals decision in *Crowell* mandates this limitation. Further, more recent decisions in this area of the law by the Fifth Circuit indicate that the mere wording of an agreement is not properly determinative of whether an "economic interest" was retained. *Rutledge* v. *United States*, *supra* at 353; *Wood* v. *United States*, *supra* at 311, see fn. 26 and accompanying text.

The essence of the agreement "is determined not by subtleties of draftsmanship but by * * * total effect." *Commissioner* v. *P. G. Lake, Inc.*, 356 U.S. 260, 266–267 (1958). The total effect of this agreement is that the so-called grantee under the contract agreed to pay to the grantor royalties based upon the quality and quantity of the minerals removed from the grantor's property for the 8 years immediately subsequent to the date of execution and agreed to make certain payments in advance.

The agreement states that the collective grantor sold all sand and gravel on and under certain property for $10,000, payable in eight annual installments. For this $10,000 the grantee was given the privilege of removing a total of 20,000 cubic yards of sand and gravel, at the rate of 2,500 cubic yards annually for the 8 years corresponding to the period for the payment of $10,000. After having extracted 2,500 cubic yards in any year the grantee was required to make an additional payment, based on a fixed scale,[3] for any gravel or sand removed in excess of 2,500 cubic yards. The agreement, further, provided that upon default by the grantee "title to all sand and gravel * * * not theretofore extracted shall automatically revert to GRANTOR." After the expiration of 8 years from the time of contracting title to all unextracted sand and gravel was to "revert" to the grantor.

The above-described provisions are a transparent attempt to metamorphose a royalty agreement into a sale. These provisions simply give the petitioner a royalty of from 10- to 50-cents per cubic yard on all sand and gravel extracted. The payment of $1,250 per year for 8 years is simply an advance payment at 50-cents per cubic yard for the first 2,500 yards removed; this is tantamount to a minimum guaranteed royalty provision. See *Wood* v. *United States*, *supra* at 307.

The provisions of the agreement calling for reversion of all sand and gravel to the grantor is merely an obfuscated method of providing for termination. An automatic reversion after 8 years is no different

---

[3] E.g., 50 cents per cubic yard of "good and washable—pit." We note that 2,500 cubic yards at 50 cents per yard equals $1,250, the amount that the grantee was required to pay annually.

than the provision for a term for years commonly found in leases or royalty agreements. Here it is merely another instance of an attempt to couch this agreement in the language of conveyance.

Perhaps the least artful device of all is contained in the paragraphs referring to the intent of the parties to the agreement. It suffices to say that the parties' written assertion that a sale was intended cannot determine questions of Federal taxation when more objective manifestations of intent are available.

On brief the petitioner argues that there was no provision in the contract which required the grantee to do other than make fixed installment payments aggregating $10,000. The grantee could have retained title to all sand and gravel for 8 years without removing any of it. It would be unrealistic, to say the least, to assume that the grantee would not exercise its contractual right, for which they paid a minimum of $10,000, to remove the prescribed amount of sand and gravel. Furthermore the contract obviously contemplates payments in excess of $10,000. The petitioner had an "economic interest" in removal of as much sand and gravel as possible by the grantee. The amounts to be received by the petitioner were of course directly dependent on extraction of deposits. We are not limited to consideration of the agreement *in vacuo*. In point of fact the amounts received by the grantor indicate that the grantee intended to and did remove in excess of 2,500 cubic yards in each of the years in question.

As the Supreme Court said in *Commissioner* v. *P. G. Lake, supra* at 266–267, "These arrangements seem to us transparent devices. Their forms do not control." The substance of the agreement, when revealed, makes clear that the petitioner retained an "economic interest" and was, thereby, in receipt of ordinary income subject to the 5-percent allowance for depletion provided by section 613(b)(6)(A).

In order to reflect concessions by the respondent with respect to the amounts of the payments received by the petitioner,

*Decision will be entered under Rule 50.*